IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCY TRUSSEL,

        Plaintiff,

- vs. -

CIGNA LIFE INS. CO OF NEW YORK and
CORNELL UNIVERSITY,

        Defendants.

CV 07 6101 (SAS)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL DISCOVERY**


FRANKEL & NEWFIELD, P.C
Attorneys for Plaintiff
585 Stewart Avenue
Garden City, New York 11530

Of Counsel:

Jason Newfield (JN5529)
Justin Frankel (JF 5983)

TRUSSEL V. CIGNA LIFE INS. CO OF NEW YORK AND CORNELL UNIVERSITY CV 07-6101

TABLE OF CONTENTS

Pages

PRELIMINARY STATEMENT………………………………….. 1

BACKGROUND…………………………………………………… 1

ARGUMENT………………………………………………………. 2

PRELIMINARY GOOD CAUSE SUPPORTING DISCOVERY………………………………………………………. 6

CONCLUSION……………………………………………………..11

## TABLE OF AUTHORITIES

                                                                                                              Page

*Anderson v. Sotheby's Inc. Severance Plan,* 2005 U.S. Dist. LEXIS 9033 (S.D.N.Y. 2005........4

*Allison v. First UNUM Life Ins. Co.,* 2005 U.S. Dist. LEXIS 3465 (E.D.N.Y. 2005) ..............4

*Asuncion v. Met Life,* 493 F.Supp.2d 716 (S.D.N.Y. 2007) ...............................................3

*Harris v. Donnely,* 2000 U.S. Dist. LEXIS 17911 (S.D.N.Y. 2000) ....................................3

*McGann v. Travelers Propo. & Cas. Welfare Benefit Plan.,* 2007 U.S. Dist. LEXIS 70233 (E.D.N.Y. 2007) .....................................................................................................6

*Mikrut v. UNUM Life Ins. Co. of Amer..,* 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2006) ...........................................................................................................10

*Mitchell v. First Reliance Standard Life Ins. Co.,* 237 F.R.D. 50 (S.D.N.Y. 2006)...............................................................................................................2,5

*Miller v. United Welfare Fund,* 72 F.3d 1066 (2d. Cir. 1995)..........................................2,5

*Muller v. First UNUM Life Ins. Co.,* 90 F.Supp.2d 204 (N.D.N.Y. 2000) .........................3

*Nagele v. Electronic Data Systems, Corp.* 193 F.R.D. 94 (W.D.N.Y. 2000) ....................2,5

*Peck v. Aetna Life Ins. Co.,* 2005 U.S. Dist. LEXIS 35605 (D. Conn. 2005) ......................6

*Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 389 (3d Cir. 2000) ......................4

*Reittinger v. Verizon Comm. Inc.,* 2006 U.S. Dist. LEXIS 83293 (N.D.N.Y. 2006) ..........3,5

*Samedy v. First UNUM Life Ins. Co.,* 2006 U.S. Dist. LEXIS 13375 (E.D.N.Y. 2006) ............3

*Sheehan v. Met Life,* 2002 U.S. Dist. LEXIS 11789 (S.D.N.Y. 2002) ................................3

*Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 174 (2d Cir. 2001) ................................6

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this motion seeking to compel Defendant to determine the sufficiency of its responses to Plaintiff's Request Document production and Interrogatories. Plaintiff also seeks to conduct depositions, at least one of the persons responsible for the claim decision upholding the termination of Plaintiff's claim, and a Rule 30(b)(6) deposition. To date, no notices of deposition have been served. However, given that the parties are briefing the issue of entitlement to discovery beyond what has been produced in compliance with Your Honor's earlier directive, it is now appropriate to address the issue of depositions - which is the most critical piece of discovery sought by Plaintiff.

## BACKGROUND

Plaintiff Nancy Trussel ("Ms. Trussel") suffers from transverse myelitis, a rare neurological disorder of the central nervous system.[1] In or around October 2003, Ms. Trussel began to notice numbness and tingling and weakness in her left lower extremity. In November 2003 she stopped working and she filed a claim for disability through her employer, Cornell University's disability insurance policy. She worked as the Human Resources Advisor at Cornell.

The claim was approved and benefits were paid under the policy for a period of time, until her claim was terminated in a June 9, 2005 letter, effective June 18, 2005. Ms. Trussel exhausted her administrative appeals and this lawsuit followed.

The parties appeared before Your Honor on October 30, 2007 for an Initial Conference and discussed the dispute between the parties as to the nature and scope of discovery.

---

[1] Bates 0887-93 is a printout from the National Institute of Neurological Disorders and Stroke discussing transverse myelitis. (Exhibit "A").

1

## ARGUMENT

Plaintiff's position is that additional discovery is warranted in this case, notwithstanding the fact that it is an ERISA disability benefits case brought pursuant to 502(a)(1)(B)[2]. Initially, it must be noted that nowhere within the Federal Rules of Civil Procedure or within the ERISA statute is discovery foreclosed in any way. Thus, it is solely a result of judicial determinations that challenges to litigants seeking discovery in ERISA disability cases have been supported.

Nonetheless, one of this Circuit's most recent analyses of this issue, Mitchell v. First Reliance Standard Life Ins. Co., 237 F.R.D. 50 (S.D.N.Y. 2006), is a good starting point within which to analyze the nature and scope of discovery in this type of claim. In Mitchell, it was determined that Plaintiff was entitled to a full panoply of discovery. In that case, Defendant sought a protective order against depositions, primarily upon the basis that the Court's review of the action was limited to the administrative record (largely echoing the position apparently advanced herein).

Significantly, the Mitchell Court held that regardless of the standard of review, discovery was permissible, including depositions. The Court cited to Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995), as well as Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000). Nagele represents one of the most comprehensive analyses of these issues, and supports Plaintiff's position that discovery beyond the exchange of the administrative record is proper.

Thus, the categories which are appropriate for discovery, regardless of the standard of review, are as follows:

---

[2] It must be stated that the governing policy certificate has no language conferring discretion upon Defendant, and thus the standard of review would be *de novo*. However, it is anticipated that Defendant will argue that other materials confer discretion, so that Plaintiff is arguing for discovery even under an arbitrary and capricious standard of review.

- the exact nature of the information considered by the fiduciary in making its decision;
- whether the fiduciary was competent to evaluate the information in the administrative record;
- how the fiduciary reached its decisions; and
- whether, given the nature of the information in the record, in was incumbent upon the fiduciary to seek outside technical assistance in reaching a "full and fair review" of the claim.

Moreover, to the extent that Defendant's contention that discretionary language exists which might otherwise compel an arbitrary and capricious standard of review, discovery as to the issue of the influence of Defendant's conflict of interest upon its handling of Plaintiff's claim is also relevant and appropriate. See Sheehan v. Met Life, 2002 U.S. Dist. LEXIS 11789 (S.D.N.Y. 2002); Samedy v. First UNUM Life Ins. Co., 2006 U.S. Dist. LEXIS 13375 (E.D.N.Y. 2006); Asuncion v. Met Life, 493 F. Supp.2d 716 (S.D.N.Y. 2007)(court directed both Rule 30(b)(6) deposition and claim handling deposition, compelled production of contract with medical consultant and compelled production of materials alleged to be attorney-client).

Plaintiff recognizes the argument advanced by Defendant that some Second Circuit district courts have required a showing of good cause prior to securing discovery. Reittinger v. Verizon Communications, Inc., 2006 U.S. Dist. LEXIS 83293 (N.D.N.Y. 2006)(ordering depositions of decision makers, articulating a non-exhaustive list of 22 categories of potential discovery, and citing Sheehan v. Met Life, Harris v. Donnelly, 2000 U.S. Dist. LEXIS 17911 (S.D.N.Y. 2000), and Muller v. First Unum Life Ins. Co., 90 F.Supp.2d 204 (N.D.N.Y. 2000)).[3]

---

[3] Defendant concedes that discovery is permissible in ERISA disability actions, but argue that a preliminary showing of good cause must be demonstrated. See letter from Counsel dated October 4, 2007 (Exhibit "B").

In seeking discovery, Plaintiff offers strong indicia of good cause to support its requests for discovery. Plaintiff, however, urges that the Court consider the well reasoned statement that "[d]irect evidence of a conflict is <u>rarely likely to appear in any plan administrator's decision</u>". <u>See Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 389 (3d. Cir. 2000)(emphasis added).[4] The absence of such direct evidence on the face of the record is a product of the insurers knowing that their conduct will be largely insulated from anything other than superficial scrutiny. This case is no different in that there is no "smoking gun" that appears on the face of record; rather, one must connect the dots to reach that determination. Discovery is being sought in good faith to further develop evidence on these issues.

Well reasoned decisions from the district courts of this circuit support the view that a claimant should not be prevented from exploring the issue of the influence of an insurer's conflict of interest through discovery. See <u>Allison v. First Unum Life Ins. Co.</u>, 2005 U.S. Dist. LEXIS 3465 (E.D.N.Y. 2005)(permitting discovery, including depositions of medical personnel and documentation relating to claim procedures); <u>Anderson v. Sotheby's Inc. Severance Plan</u>, 2005 U.S. Dist. LEXIS 9033, *16-17 (S.D.N.Y. 2005)(agreeing with <u>Allison</u>, and holding that requiring a claimant to provide a full good cause showing just to secure discovery would create a vicious cycle).

---

[4] This well reasoned approach appears to form the basis of Magistrate Judge Gold's decision to permit discovery in another ERISA disability case. <u>Joseph-Myers v. UNUM Provident</u>, 03-CV-0558 (FB)(SMG). Attached as Exhibit "C" is the decision from Judge Block rejecting the Rule 72 application to overturn Magistrate Gold's discovery Order.

Quoted within the opinion are the words of Magistrate Gold, "I can't imagine how the plaintiff could establish or have an opportunity to attempt to establish that a conflict of interest in fact affected the determination of her eligibility . . . for benefits if [she] was precluded from taking discovery on the subject."

4

Plaintiff does not assert at this time (as it is premature), that evidence beyond the administrative record will be admitted to the Court. Rather, at this juncture, Plaintiff seeks to develop evidence to support its contentions and ultimately, to assist the trier of fact in deciding Plaintiff's challenge to the termination of his claim - regardless of the standard of review. See Reittinger v. Verizon Comm., Inc., 2006 U.S. Dist. LEXIS 83293 (N.D.N.Y. 2006)(holding that discovery is permissible "to assist the courts in determining whether the plan administrator's or fiduciary's decision was based upon a consideration of the relevant factors and whether there has been a clear error of judgment."). Id., at *7.

The array of decisions from the Second Circuit largely support the requested discovery. In fact, one of the Second Circuit's most recent analyses of this issue, Mitchell v. First Reliance Standard Life Ins. Co., 237 F.R.D. 50 (S.D.N.Y. 2006), is appropriate for this analysis. As noted in Plaintiff's moving papers, in Mitchell, it was determined that Plaintiff was entitled to a full panoply of discovery. The Court rejected defendant's motion for a protective order against depositions, as urged by Prudential.

Holding that discovery was permissible, regardless of the standard of review, the Mitchell Court relied upon both Second Circuit and District Court cases, including Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995), as well as Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000). In Miller, the Court relied upon deposition testimony from the plan administrator in affirming the conclusion that the claim decision was arbitrary and capricious. 72 F.3d at 1072.

Other cases which embrace the concept that discovery is appropriate where a claimant seeks to demonstrate the influence of a conflict of interest include Zervos v. Verizon New York, Inc., 252 F.3d 163, 174 (2d Cir. 2001)(finding that district court would not be confined to the administrative record in determining whether the plan administrators' decision to deny his coverage request was tinged by a conflict of interest); Peck v. Aetna Life Ins. Co., 2005 U.S. Dist. LEXIS 35605 (D. Conn. 2005); and McGann v. Travelers Prop. & Cas. Welfare Benefit Plan, 2007 U.S. Dist. LEXIS 70233 (E.D.N.Y. 2007)(J. Hurley).

**PRELIMINARY GOOD CAUSE SUPPORTING DISCOVERY**

To the extent that good cause would be a necessary showing to entitle Plaintiff to pursue her discovery, Plaintiff is able to offer a plethora of procedural issues that cause concern as to Defendant's claim handling and which provide good cause in support of pursuing discovery.

1. Defendant sought repeated addendums from its paper reviewing physician, in an effort to impact the conclusion reached and create support for Defendant's result oriented claim handling.

Defendant originally sought an opinion from Dr. Joseph Jares, who performed a paper review on Defendant's behalf. This review, dated November 18, 2005 (Bates 0297-0306)(Exhibit "D"), found Plaintiff restrictions and limitations (unable to work in even a sedentary fashion), to be supported by the medical documentation. Dr. Jares noted in his report that "[T]his constellation of symptoms would render her incapable of working effectively in her normal job." He also stated that [T]his constellation of neuropathic pain involving the left lower extremity plus the combination of complete lack of bowel and bladder control would make it impossible for Ms. Trussel to work." He also found her reported activities to be consistent with the surveillance obtained by Defendant and

6

noted that being able to drive to a doctor's appointment or being able to go to a McDonald's or go to the Salvation Army store does not equate to working effectively.

Obviously not satisfied with Dr. Jares' conclusions, which supported the continuation of benefits, Defendant sought an addendum opinion[5], which Dr. Jares provided on December 12, 2005 (Bates 1078-79)(Exhibit "F"). In this addendum, he modified his report to alter his use of the term job to occupation (at the request of Defendant). He was asked to review the DOT classification of a Human Resources Advisor under the DOT code, as well as the work requirements of this occupation. Notwithstanding Defendant's effort to alter his conclusions, Dr. Jares once again stated that his "statements as outlined in [his] original report in regards to Ms. Trussel's occupation remains as is." Thus, he continues to opine that Ms. Trussel was impaired.

Once again dissatisfied that Dr. Jares would not embrace the termination of Plaintiff's claim, Dr. Jares was again asked for an addendum. This further addendum, again at the request of Defendant was dated December 21, 2005 (Bates 1084-86)(Exhibit "G"). Defendant was now asking Dr. Jares if Plaintiff could work at any occupation, after his previous and empathic finding that she lacked even sedentary work capacity. With this prodding from his [employer], Dr. Jares now felt that Plaintiff would be capable of performing in a sedentary level occupation in which when sitting

---

[5]   Internal emails reflect that Defendant was seeking the addendum. Bates 1071-72 are two pages of a three page email chain (Exhibit "E"). On page 3 (Bates 1072), Defendant indicates that Plaintiff's "occupation" was of a light physical demand capacity - not sedentary as was viewed throughout the various Dr. Jares' reports and addendums.

Perhaps even more interesting, yet not revealed within the record is that Defendant indicated within their internal claim handling diary (Acclaim) that No Addendum was needed as pertaining to Dr. Jares' report - yet an addendum was sought, apparently because his first opinion supported impairment. See Acclaim Notes, Bates 0133-34 (Exhibit "I").

she would have the opportunity for customary work breaks. He also noted that she would need immediate access to bathroom facilities due to her unpredictable bouts of fecal and urinary incontinence.

Dr. Jares then once again provided Defendant an addendum report, dated January 5, 2006 (Bates 1074-76)(Exhibit "H"). This addendum reflected a discussion with Dr. Stackman, one of Plaintiff's treating providers. Plaintiff's treating doctor, who had provided ongoing care and treatment to Plaintiff, indicated that she could not sit for more than a couple of minutes at a time, and was not able to work.[6] Dr. Jares noted that the surveillance video demonstrated that she was able to sit in a car for over 90 minutes traveling to a doctor, and that she was able to travel to the Salvation Army store and a fast food restaurant.[7]

That Dr. Jares was now advocating against Plaintiff's claim based upon the surveillance, when he expressly rejected the utility of the surveillance materials as evidence of her functional capacity for work is tantamount to a showing of his bias, and the fact that he was now an advocate for Defendant, rather than a neutral medical reviewer. In fact, now, for the first time, Dr. Jares noted

---

[6] Dr. Stackman provided a detailed office note on June 13, 2005 following Plaintiff's IME and responding to those findings (Bates 0356-58)(Exhibit "J"). Dr. Stackman articulated the basis for his opinions and the limitations upon Plaintiff, including the "extreme limitation[ ] that are imposed on her because of the nature of her pain and factors triggering worsening of the pain, again including even sitting."

Dr. Stackman submitted many other medical records supporting Plaintiff's claim, including a detailed letter dated May 11, 2006, in which it was opined that sitting and standing exacerbate her neuropathic pain and render her disabled from working in any occupation, a statement that was being repeated, rather than expressed for the first time (Bates 0744-45)(Exhibit "K").

[7] It must be noted that the travel to the doctor was required by Defendant, as it was the scheduled IME from Defendant - and failure to comply would have resulted in a termination of her claim.

8

a discrepancy between Plaintiff's self reported limitations and the surveillance, a complete reversal from his opinion of December 12, 2005.

    2.    Defendant's reliance upon the surveillance results demonstrates a clear bias in its claim handling.

Defendant has sought to rest its claim termination largely upon surveillance it obtained of Plaintiff. This surveillance was viewed by Dr. Jares, who initially found it to not have significance toward demonstrating Plaintiff's ability to work, only to change his opinion and later embrace this surveillance in determining that Plaintiff could work. Reliance upon this surveillance, which at best could be characterized as demonstrating a limited ability to engage in activities of life, does nothing to demonstrate the ability to sustain work. It is also incredulous that Defendant's major surveillance "findings" consist of Plaintiff's travel to a medical appointment which it compelled, and which it provided transportation for. The fact that Defendant forced Plaintiff to travel such a long distance, under the penalty of not complying with her policy requirements, and then Defendant using her compliance as the foundation for terminating her benefits, is tantamount to bad faith, but is at least a clear demonstration that Defendant's conduct was being guided by its own financial self interest and not that of a neutral claim evaluator.[8]

Plaintiff addresses how limited the surveillance materials are in a letter dated September 24, 2006 (Bates 0721-24)(Exhibit "L"). In this letter, she notes that the entirety of video obtained amounts to just over 2 minutes, and that the travel, other than that mandated by Defendant, amounted to 44 minutes of travel over 4 stops.

---

    [8]    Predicated upon her compliance with the IME request, Defendant has asserted that Plaintiff "can sit and drive a car for prolonged periods of time."

    3.    Defendant's failure to account for Social Security's finding of disability, while embracing the offset against its obligations to Plaintiff, demonstrates conduct guided by its financial conflict of interest.

Plaintiff applied for Social Security Disability benefits, and was awarded these benefits while her claim was pending with Defendant. In fact, Defendant provided the disability advocate, Advantage 2000 Consultants, to assist Ms. Trussel in the pursuit of her Social Security Disability claim.[9] When Ms. Trussel was awarded Social Security Disability, Defendant readily embraced the financial benefit contained in the policy to offset her benefits for both herself and her dependent.

What is interesting about Defendant's apparent embrace of the Social Security Regulations is that Defendant has selectively chosen to embrace Social Security regulations and findings where it suits its needs. Such conduct is further evidence that Defendant's conduct has been influenced by its conflict of interest. <u>Mikrut v. UNUM Life Ins. Co. of Amer.</u>, 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2006)(holding that the insurer was influenced by its conflict of interest where it failed to address self reported pain in considering the claim, where it rejected treating physicians in favor of paid physicians, and where it failed to consider the findings of Social Security, despite accepting the financial benefit of the SSDI award).

---

[9]     Bates 0099-0100, and a referral form on Advantage 2000 letterhead indicating that Defendant referred Ms. Trussel (Exhibit "M").

## CONCLUSION

Plaintiff has made a sufficient showing of good cause to permit discovery regardless of the standard of review which the Court may apply. Accordingly, Plaintiff respectfully requests an Order permitting discovery.

                                          Respectfully submitted,

                                          FRANKEL & NEWFIELD, P.C.

By:    Jason A. Newfield

## CERTIFICATE OF SERVICE

I, Jason Newfield, hereby certify that on December 21, 2007, a copy of the Plaintiff's Memorandum of Law, Declaration of Jason Newfield, and Exhibits in Support of Motion for Discovery was mailed via first class mail, to the counsel listed below:

Emily Hayes, Esq.
Wilson Elser Moskowitz Edelman & Dicker, LLP
3 Gannett Drive
White Plains, NY 10604

These documents were also filed ECF.

_____
Jason Newfield