**EXHIBIT A**

Richard Lode

```
 1                    -----

 2          IN THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 3

 4                    -----

 5
     JANE BARNES,              ) No.:  07cv 6103 (SHS)
 6                             )
                Plaintiff,     )
 7                             )
                vs.            ) DEPOSITION OF:
 8                             ) Richard Lodi
     LIFE INSURANCE COMPANY    )
 9   OF NORTH AMERICA,         )
                               ) DATE:
10              Defendant.     ) January 16, 2008
                               )
11                             )
                               ) REPORTED BY:
12                             ) Bernadette Mullen

13                    -----

14

15

16          DEPOSITION OF RICHARD LODI,

17   the witness herein, called upon for examination,

18   taken pursuant to the New York Rules of Civil

19   Procedure, by and before Bernadette Mullen, a Court

20   Reporter and Notary Public in and for the

21   Commonwealth of Pennsylvania, at the Offices of

22   Esquire Deposition Services, 1825 Gulf Tower, 707

23   Grant Street, Pittsburgh, Pennsylvania, on Wednesday,

24   January 16, 2008, commencing at 12:15 p.m.

25   JOB NO. 200057
```

Page 2

```
 1              COUNSEL PRESENT
 2
 3   For the Plaintiff:  Justin Newfield, Esquire
          FRANKEL & NEWFIELD, P.C.
 4        585 Stewart Avenue - Suite 301
          Garden City, New York  11530
 5
     For the Defendant:  Fred N. Knopf, Esquire
 6        WILSON ELSER
          3 Gannett Drive
 7        White Plains, NY 10604-3407
 8
                 ------
 9
10              I-N-D-E-X
11
     DEPONENT                    PAGE
12
     RICHARD LODI
13
     By Mr. Newfield            3, 41
14   By Mr. Knopf                 39
15           ------
16            E-X-H-I-B-I-T-S
17   MARKED                      PAGE
18   Deposition Exhibit A          9
     Deposition Exhibit B         13
19   Deposition Exhibit C         25
     Deposition Exhibit D         28
20   Deposition Exhibit E         32
21
22
23
24
25
```

Page 3

```
 1          P-R-O-C-E-E-D-I-N-G-S
 2              ------
 3          RICHARD LODI,
 4       a witness herein,
 5       having been first duly sworn,
 6       was examined and testified as follows:
 7
 8              EXAMINATION
 9   BY MR. NEWFIELD:
10   Q   Good morning, Mr. Lodi.  My name is Jason
11       Newfield.  In the action entitled Jane Barnes
12       versus Life Insurance Company of North America,
13       my office represents Janes Barnes.  We are going
14       to be asking you a series of questions today.
15       While we're not in person, I'd like you to
16       envision me sitting next to you.  I see that big
17       smile that just came across your face.  If you
18       don't understand my questions, because we are by
19       phone, please let me know and I will do my best
20       to rephrase the question or ask it in a manner
21       in which you'll be able to understand it and
22       answer.  Okay?
23   A   I certainly will.  If my voice doesn't come
24       through clearly, please let me know as well.
25   Q   So far, so good.
```

Page 4

```
 1       If you do answer the question, I'm going to
 2       assume that you did understand the question.  I
 3       think that's an important aspect of this.  I'll
 4       just state for that record that you are
 5       appearing today on behalf of Life Insurance
 6       Company of North America in response to a
 7       deposition notice that was served upon your
 8       counsel in this case; is that correct?
 9   A   Yes, that is correct.
10   Q   Another instruction, while a question is pending
11       I would ask that you don't have any discussions
12       with your counsel.  If at any point in time
13       you'd like to have a discussion with your
14       counsel, so long as there is not a question
15       pending, just let me know and you guys could
16       discuss whatever issues you have, whether on the
17       record or off the record.
18              Okay?
19   A   I will certainly do that.
20          MR. NEWFIELD:  I would just ask
21       the court reporter since we're not
22       there if you could be our eyes and
23       ears and indicate if there are any
24       discussions occurring while a question
25       is pending, which I don't presume will
```

Page 5

```
 1       occur, but just because we don't have
 2       a videotape and we're not there.
 3       Thank you.
 4          MR. DEFT:  Mr. Newfield, I also
 5       want to note for the record that
 6       Mr. Lodi is being produced pursuant to
 7       your notice to LINA made under Rule
 8       30(b)6 of the Federal Rules of Civil
 9       Procedure.  We are proffering  Mr.
10       Lodi to speak about topics 1, 3, and 4
11       contained in the Notice which is dated
12       January 7, 2008.  Quite frankly, we
13       think he might be able to speak on
14       topic No. 2, but it seemed as though
15       some language was missing, so it's a
16       little unclear to us, but Mr. Lodi is
17       being proffered for the operational
18       aspects of information responsive to
19       these topics.
20          As you know, we have also
21       proffered two witnesses to be deposed
22       on Friday that are familiar with the
23       personnel related and
24       accounting/finance related topics that
25       are covered by a reasonable
```

Richard Lode

Page 6

1  interpretation of these questions or
2  topics.
3         MR. NEWFIELD: Fair enough. Then
4  I guess my response will be that this
5  is the first time we're being advised
6  of the specific topics in which Mr.
7  Lodi is being proffered and we will do
8  our best if we address issues under
9  category 2 to stay within his realm of
10  knowledge. I guess my only further
11  response to that is we are not sure
12  where the accounting or finance
13  overlaps or the personnel overlaps,
14  but I presume we'll do our best to
15  work through those issues together.
16  If we have an issue or a problem,
17  we'll work to resolve it. Okay?
18         I'm taking your silence, I guess,
19  as acquiescence.
20         MR. DEFT: Yes. I don't typically
21  make it a habit of answering questions
22  during depositions.
23         MR. NEWFIELD: I'm just trying to
24  work through the issues, but fair
25  enough.

Page 7

1  BY MR. NEWFIELD:
2  Q  Mr. Lodi, initially, let me ask you this. Have
3     you previously been deposed in any other case?
4  A  Yes, I have been.
5  Q  Can you estimate for me the amount of times
6     you've been previously deposed?
7  A  I would estimate sixteen, sixteen times.
8  Q  In those capacities you were deposed, was
9     that all in relation to knowledge about either
10     LINA -- for the purpose of this deposition I'm
11     going to say LINA to reference Life Insurance
12     Company of North America and any of the
13     companies that fall within the Cigna group
14     insurance?
15         MR. KNOPF: Objection.
16         You can answer.
17         THE DEPONENT: Yes, that is
18  correct.
19  BY MR. NEWFIELD:
20  Q  I mean that in contrast with any personal action
21     you might have had, whether a third party action
22     where you were a plaintiff or a defendant
23     personally?
24         MR. KNOPF: Objection to form.
25         You can answer.

Page 8

1         THE DEPONENT: I understand.
2  BY MR. NEWFIELD:
3  Q  I just used a term that was not defined. I used
4     the term Cigna group insurance. Can you tell me
5     what your understanding of Cigna Group Insurance
6     is?
7  A  My understanding is that it's a marketing brand
8     for disability products offered by various Cigna
9     companies.
10  Q  What companies would fall within that group?
11  A  The three underwriting entities of Life
12     Insurance Company of North America, Cigna Life
13     Insurance Company of New York and Connecticut
14     General Life Insurance Company.
15  Q  What is your job title within -- what is your
16     job title?
17  A  Senior operations representative.
18  Q  Who is your employer?
19  A  I worked for Life Insurance Company of North
20     America.
21  Q  What is your job -- I know your job title is
22     senior operations representative. What does
23     that mean? What are your duties?
24         MR. KNOPF: Objection form.
25         THE DEPONENT: I worked with

Page 9

1         claims, short-term and long-term
2         disability claims that are in
3         litigation.
4         MR. NEWFIELD: If the court
5         reporter could please mark the
6         Affidavit of Richard Lodi as Exhibit
7         A.
8         (Whereupon, Deposition Exhibit A was
9         marked for purposes of identification)
10  BY MR. NEWFIELD:
11  Q  Mr. Lodi, I would like you to take a look at
12     what's been marked as Exhibit A and ask you to
13     identify that document for me, please.
14  A  This is an affidavit in the matter of Jane
15     Barnes against Life Insurance Company of North
16     America that I signed on September 11 of last
17     year.
18  Q  Is that a two-page document?
19  A  Two pages along with an attachment noted to be
20     Exhibit A, which is maybe two to five pages
21     long.
22  Q  But the actual body of your affidavit is two
23     pages?
24  A  That is correct.
25  Q  With nine numbered paragraphs?

3 (Pages 6 to 9)

Richard Lode

Page 10

1   A   Yes, sir.
2   Q   Thank you.
3       I'd like you to take a moment to read to
4       yourself Paragraph 2 and then I'm going to ask
5       you a question?
6   A   Okay.
7   Q   Have you read it?
8   A   Yes, I have.
9   Q   It indicates that as part of the job
10      responsibilities you're familiar with Jane
11      Barnes' claim for disability benefits; is that
12      correct?
13  A   Yes, it does.
14  Q   It indicates that it's under a policy notated as
15      LK-7321; is that correct?
16  A   Yes.
17  Q   It also indicates that you're familiar with the
18      claim file relating to Mrs. Barnes' claim?
19  A   Yes.
20  Q   Have you reviewed any materials in preparation
21      for today's deposition?
22  A   No, I've not.
23  Q   Have you had any discussions with anyone in
24      preparation for today's deposition?
25  A   Yes, I did.

Page 11

1   Q   Can you identify for me who you've had
2       discussions with?
3   A   I had a discussion with Fred.
4   Q   I don't want to know the nature of your
5       discussion with counsel because it's likely
6       privileged. Other than Fred Knopf, have you had
7       discussions in advance of today's deposition
8       with anyone concerning your deposition today?
9   A   No.
10  Q   Prior to this deposition, have you had
11      discussion with anyone concerning Mrs. Barnes'
12      claim?
13  A   No.
14  Q   In connection with this affidavit that you
15      executed on September 11, 2007, did you have
16      discussions with anyone regarding the substance
17      of this affidavit?
18  A   No, I did not.
19  Q   Did you prepare this affidavit or did someone
20      prepare it on your behalf?
21  A   It was prepared on my behalf.
22  Q   Presumably it was prepared by counsel?
23  A   That's my understanding, yes.
24  Q   Did you have any discussions with counsel prior
25      to signing this affidavit?

Page 12

1   A   No. I did review the claim file prior to
2       signing.
3   Q   When you say you reviewed the claim file, can
4       you describe for me without saying precisely
5       what you reviewed, but generally what you
6       reviewed, what type of documents, or you can
7       tell me that you reviewed the entirety of the
8       claim file?
9   A   I did review the entirety of the claim file.
10  Q   Are you familiar with the entirety of the claim
11      file?
12  A   My recollection -- I haven't reviewed it
13      actually since I did this initial review.
14  Q   How many times did you spend reviewing the
15      entirety of the claim file prior to executing
16      this affidavit?
17  A   I would say approximately 30 to 45 minutes.
18  Q   Did you review the policy documentation during
19      the course of your review of the claim file?
20  A   I believe I noted it as being contained in the
21      claim file, but I didn't think it was necessary
22      to review that document page by page as I did
23      the rest of the claim file.
24  Q   Are you familiar at all with this particular
25      long-term disability claim plan, LK-73231?

Page 13

1           MR. KNOPF: Objection to form.
2       I'm not sure I understand what you
3       mean by that.
4   BY MR. NEWFIELD:
5   Q   Have you ever reviewed policy LK-7321?
6   A   Yes, I have.
7           MR. NEWFIELD: What I would like
8       to do, I'd like to ask the court
9       reporter to mark the lengthy document
10      which is under Exhibit A and we're
11      going to make that Exhibit B.
12          MR. KNOPF: Give us one second. I
13      want to get a stapler because there's
14      papers all over.
15          (Off the record)
16          MR. KNOPF: Jason, do you want --
17      there's a cover sheet that says
18      Exhibit A --
19          MR. NEWFIELD: I want to remove
20      that and I just want to work off
21      whatever those documents are in
22      Exhibit B.
23  (Whereupon, Deposition Exhibit B was
24      marked for purposes of identification)
25          MR. NEWFIELD: I'm just going to

4 (Pages 10 to 13)

Richard Lode

Page 14

1    note for the record that page 1 at the
2    bottom of the second sheet, that it
3    jumps to page 3 then it jumps to page
4    5, then it seems to be sequential.
5    I'm not sure if this is the complete
6    policy, but, nonetheless, I'm going to
7    ask questions predicated upon this
8    document.
9         MR. KNOPF: That is what you faxed
10    over here.
11   BY MR. NEWFIELD:
12   Q  Mr. Lodi, I think you just stated that you were
13    familiar with this particular plan; is that
14    correct?
15   A  Yes.
16   Q  But that you hadn't reviewed it in connection
17    with Ms. Barnes' claim?
18   A  That is correct.
19   Q  So, what is the basis of your familiarity with
20    this plan document?
21   A  I say that because I'm basically familiar with
22    the line of policies that I review in my current
23    role as necessary and in my prior roles with the
24    company.
25   Q  Have you in your role with the company at any

Page 15

1    previous time had occasion to specifically look
2    at a Zeneca Holdings policy?
3    A  Yes.
4    Q  What I'd like to do is turn your attention to
5    the page within this exhibit that is noted at
6    the bottom as page 5.
7    A  Okay.
8    Q  Thank you. Can you indicate for me in a general
9    sense what this page references?
10   A  It references the Certificate of Insurance
11    identifying those individuals who are eligible,
12    providing information about the waiting period
13    and giving an initial description, if you will,
14    of the classes of eligible persons.
15   Q  Within those classes of eligible persons, I'd
16    like you look to on -- I'm going to note for the
17    record that there appear to be two columns that
18    are identified below that. Would you agree?
19   A  Yes, that is correct.
20   Q  Look to the column to your right and look down
21    to the third identified location.
22        Do you see what that says?
23   A  Yes. It says, New York, New York: Salaried
24    employees.
25   Q  Do you know what significance that has with

Page 16

1    respect to the Zeneca Holdings policy?
2    A  Tying into the preceding sentence in the
3    paragraph above, it's noted: Employees in the
4    following locations, bargaining groups or
5    occupational classes are eligible for insurance
6    under this policy.
7    Q  That's what it says. Can you tell me what it
8    means to you?
9    A  That someone working in New York, New York as a
10    salaried employee could be covered under this
11    policy.
12   Q  So that the Zeneca Holdings policy that was
13    issued by LINA would cover employees that are
14    located in New York?
15   A  Potentially as well as all of the other
16    locations listed.
17   Q  Yes, all the ones that are identified on that
18    page as well as on page 6, correct?
19   A  Correct.
20   Q  How long have you worked for LINA?
21   A  I've been with the company since January of
22    1988, about 20 years.
23   Q  In the approximate 20 years that you've worked
24    for LINA, have you ever had occasion to be
25    involved in a claim with a -- prior to Ms.

Page 17

1    Barnes for a Zeneca Holdings employee?
2    A  Yes, I have.
3    Q  Do you recall approximately how many?
4    A  No, I don't. In one of the prior roles, I was a
5    regional claims manager responsible for several
6    teams of case managers. I do recall the Zeneca
7    policy being in one of my teams.
8    Q  So, in that regard, even though you can't
9    approximate how many claimants you've had
10    exposure to from Zeneca Holdings, do you have
11    any specific recollections as to whether any of
12    those claimants resided in New York?
13        MR. KNOPF: Objection. Are you
14    asking Mr. Lodi that question in his
15    personal capacity or in the corporate
16    capacity pursuant to which he's being
17    proffered at this deposition?
18        MR. NEWFIELD: Well, his knowledge
19    is predicated upon his experience with
20    LINA. So, it's in that capacity that
21    I'm asking him. I'm not sure that I
22    have to characterize it as personal or
23    corporate. He is an agent of the
24    corporation and is being proffered as
25    an agent of the corporation pursuant

Page 18

1    to 30(b)6, but his experience brings
2    to bear responses to these questions.
3        THE DEPONENT: I don't have a
4    specific recollection of working with
5    or on any Zeneca employee's claim who
6    resides in the State of New York.
7  BY MR. NEWFIELD:
8  Q  Do you have knowledge as to how claim handling
9    personnel are assigned claim files?
10 A  Yes, I do.
11 Q  Can you share that with us.
12 A  Yes. Basically when a new policyholder -- a
13   company that has their disability insurance with
14   us is assigned to one of our three claim
15   offices, the team leader with the help of their
16   regional claims manager will largely look at the
17   claim volume within a team and, ideally, we want
18   to assign one case manager to the employer so
19   that can be their main point of contact, if you
20   will, and give them an opportunity to develop a
21   good working relationship with the customer.
22   That decision is largely based on volume and
23   capacity within the team.
24 Q  The claim people -- strike that, please.
25     You mentioned three offices. Can you

Page 19

1    identify the locations of those three offices?
2  A  Sure. They're in Glendale, California; Dallas,
3    Texas; and Pittsburgh, Pennsylvania.
4  Q  Claim personnel that operate out of Glendale,
5    California, do you know whether they're
6    employees of LINA or one of the other entities
7    -- one of the other underwriting entities?
8  A  My understanding is everyone who works in any of
9    the three claims offices is an employee of
10   LINA -- or are employees of LINA.
11 Q  So, all of claim handling personnel are
12   employees of LINA to the best of your knowledge?
13 A  Yes.
14 Q  What about respect to medical in-house
15   personnel, are those also employees of LINA?
16 A  Yes.
17 Q  What about vocational personnel in-house, are
18   those also employees of LINA to the best of your
19   knowledge?
20 A  Yes.
21 Q  Is it fair to say that employees of LINA will
22   handle claims from underwriting companies in
23   addition to simply the LINA underwriting
24   company?
25     MR. KNOPF: Objection to form.

Page 20

1        THE DEPONENT: Yes, that is
2    correct.
3  BY MR. NEWFIELD:
4  Q  Why don't you identify for me the different
5    underwriting entities that employees of -- claim
6    employees of LINA will be handling or charged
7    with handling?
8        MR. KNOPF: I've got to interrupt.
9    I hate to interrupt, but could you
10   please re-do that.
11       MR. NEWFIELD: Sure. We've
12   established that all the claim
13   handling personnel are employees of
14   LINA. I'm asking if he can identify
15   for me the entities in which the LINA
16   employees handle claims. I expect
17   that answer is going to be LINA,
18   CLICNY and Connecticut General.
19       MR. KNOPF: Then I'd appreciate it
20   if you actually posed that question.
21 BY MR. NEWFIELD:
22 Q  So, Mr. Lodi, can you identify for me each of
23   the underwriting companies that any LINA
24   employee claims handling personnel handles
25   claims for?

Page 21

1  A  Yes, and they are the three entities that you
2    identified.
3  Q  Can you specifically state those for the record,
4    please.
5  A  They are CLICNY, CGLIC and LINA.
6  Q  Because I'd like a very clear record, rather
7    than use acronyms, can you articulate those?
8  A  Certainly. Cigna Life Insurance Company of New
9    York, Life Insurance Company of North America
10   and Connecticut General Life Insurance Company.
11 Q  With regard to the Connecticut General Life
12   Insurance Company, do you know what states the
13   policyholders in which those policies are issued
14   are domiciled?
15       MR. KNOPF: Objection. I have no
16   idea what you mean by that.
17 BY MR. NEWFIELD:
18 Q  Since it's not attached, I'm going to just tell
19   you. I want to know what states Connecticut
20   General does the underwriting for.
21     Do you understand the question, Mr. Lodi?
22 A  My understanding is that there are individuals
23   covered under General Life Insurance Company
24   claims. I don't know that there are any states
25   they don't come from. I'm thinking of some of

6 (Pages 18 to 21)

Richard Lode

Page 22

1    the large policyholders, AT&T and Lucent, for
2    example, that are Nationwide.
3    Q   Maybe I wasn't clear, and I understand your
4        answer and I would like to touch upon that
5        shortly, but I think that in previous responses
6        you've indicated that LINA, Life Insurance
7        Company of North America, does not issue any
8        policies in New York, correct?
9    A   That is correct.
10   Q   So, I guess my question is, where does CLICNY
11       issue policies, what policyholders in what
12       states?
13   A   I believe that would be New York State.
14   Q   What about CGLIC, what states?
15   A   I'm not familiar with any states in which they
16       do not issue policies. I didn't do any research
17       with respect to any states that CGLIC is not
18       license to do business in.
19   Q   LINA issues in what states?
20   A   My understanding is all the states, but New
21       York.
22   Q   I think you touched about that some
23       policyholders are national so they may have
24       employees throughout the United States?
25   A   Yes.

Page 23

1    Q   Is Zeneca one of those policyholders to your
2        knowledge?
3    A   I don't believe so.
4    Q   But Zeneca certainly has employees in more than
5        one state, correct?
6    A   Yes, that is correct.
7    Q   Do you have any knowledge as to whether Zeneca
8        has employees in New York?
9    A   I had looked in our system. I believe since the
10       policy was incurred in 1990 there were
11       approximately 133 claims and one of them,
12       although the system showed a work address of
13       Delaware, the last mailing address for the
14       claimant in the system was Victor, New York, but
15       I didn't have a chance to look at that claim
16       file. I don't know if that's where the
17       individual moved or if that's where they've been
18       throughout.
19   Q   So, that was 133 claims for Zeneca employees
20       since 1990?
21   A   Yes.
22   Q   To you knowledge, does CLICNY have any employees
23       -- CLICNY employees that handle disability
24       claims?
25   A   No.

Page 24

1    Q   How about the same question with regard to
2        CGLIC?
3    A   No.
4    Q   No employees that handle disability claims?
5    A   No.
6    Q   Do you have any knowledge as to what type of
7        people are employed by CLICNY?
8                MR. KNOPF:  Only good people.
9                Can you ask a different question.
10               MR. NEWFIELD:  I expected the
11           objection to form.
12   BY MR. NEWFIELD:
13   Q   If you can characterize them, without
14       adjectives, but with titles.
15   A   I believe there's a sale offices in New York.
16   Q   What about with respect to CGLIC, can you
17       provide, to the best of your knowledge, job
18       titles rather than adjectives?
19   A   Well, my understanding and knowledge is that all
20       three entities have their own disparate sales
21       force and they also have different underwriters
22       as well.
23   Q   But everything on the claim side is through LINA
24       employees, correct?
25   A   Yes.

Page 25

1                MR. NEWFIELD:  I would like to
2            have the court reporter mark I believe
3            what we sent over as Exhibit B, which
4            is the Subsidiaries of the Registrant.
5            We'll make that Exhibit C.
6            (Whereupon, Deposition Exhibit C was
7            marked for purposes of identification)
8    BY MR. NEWFIELD:
9    Q   Mr. Lodi, I would like to look at what's been
10       marked as C for identification, please.
11   A   Yes, I have it in front of me.
12   Q   Are you familiar with this document?
13   A   This is the first time I'm seeing it, but it
14       looks self-explanatory.
15   Q   If we can ignore what's at the header of the
16       pages and focus on the body of the page, can you
17       tell me what you believe this document to be?
18   A   I believe it's a list of the subsidiaries of
19       Cigna Corporation as of December 31, 2005 with
20       their jurisdictions of organizations shown in
21       parentheses.
22   Q   What is Cigna Corporation?
23   A   My understanding is it's a holding company.
24   Q   If we could look at both page 1 and 2 as best
25       you can simultaneously, do you see that there's

7 (Pages 22 to 25)

Richard Lode

Page 26

1    a Roman numeral I on page 1 of that and then a
2    Roman numeral 2 on the second page --
3    A   Yes, I see that.
4    Q   -- which seems to indicate some broader
5        categories. Can you identify for me what those
6        broader categories are?
7    A   Roman numeral I is Connecticut General
8        Corporation and Roman numeral II is Global
9        Holdings, Incorporated.
10   Q   What is Connecticut General Corporation?
11   A   I'm not sure how to respond to that. It is
12       Connecticut General Corporation.
13   Q   Do you have an understanding as to what
14       Connecticut General Corporation does?
15   A   I believe they underwrite various insurance
16       products -- or through their subsidiaries they
17       do so. It's also a medical provider.
18   Q   Is one of those underwriting companies LINA?
19   A   Yes.
20   Q   Another one is CLICNY?
21   A   Yes.
22   Q   And another one is CGLIC?
23   A   Yes.
24   Q   In the course of reviewing this file, did you
25       come across the name Dawn Barrett?

Page 27

1    A   In the course of reviewing the file for Jane
2        Barnes?
3    Q   Yes.
4    A   Not that I recall.
5    Q   Do you know Dawn Barrett?
6    A   Yes.
7    Q   How do you know Dawn Barrett?
8    A   When I was regional claims manager she was -- I
9        was responsible for the -- I believe it was the
10       support team at that time and she was a member
11       of that team. I believe now she's a short-term
12       case manager in the Pittsburgh claims office.
13   Q   When you had involvement on the claims side, did
14       she report to you?
15   A   Her manager reported to me.
16   Q   How many steps beneath you in the chain of
17       command was Dawn Barrett at that time?
18           MR. KNOPF: Objection to form.
19           THE DEPONENT: Well, the way the
20       support team was structured, they all
21       reported to one team leader and that
22       team leader was one of my direct
23       reports.
24           MR. NEWFIELD: I would like you to
25       take a look at a document that I'm

Page 28

1    going to ask the court reporter to
2    mark what I think came under Exhibit C
3    which we'll mark Exhibit D.
4        MR. KNOPF: A two-page Declaration
5    of Dawn Barrett?
6        MR. NEWFIELD: Yes.
7        (Whereupon, Deposition Exhibit D was
8    marked for purposes of identification)
9    BY MR. NEWFIELD:
10   Q   Take a couple of minutes or however much time
11       you need to review seven-paragraph declaration
12       and tell me when you're ready to answer a
13       question.
14   A   Okay.
15   Q   You're ready?
16   A   Yes.
17   Q   Have you seen this document prior to today?
18   A   No, I have not.
19   Q   Do you know what this document is in regards to?
20   A   Not specifically.
21   Q   Can you read Paragraph 3 once again to yourself
22       and then I want to ask you a question.
23   A   Okay.
24   Q   Do you see where she says she represents to
25       insureds and others that she's a representative

Page 29

1    of Cigna?
2    A   Yes, I see that.
3    Q   Do you similarly represent -- hold yourself out
4        as a representative of Cigna ?
5            MR. KNOPF: Objection. I don't
6        know how the witness can answer that.
7        It assumes that what's in this
8        affidavit or declaration is accurate.
9            MR. NEWFIELD: Fair enough.
10   BY MR. NEWFIELD:
11   Q   Do you hold yourself out to insureds or others
12       with whom you do business as a representative of
13       Cigna?
14   A   No.
15   Q   Who do you hold yourself out as a representative
16       with when you do business with insureds and
17       others?
18   A   As a representative of either LINA, depending
19       upon the case I'm involved with, CLICNY or
20       CGLIC, Cigna is the holding company or the brand
21       name or marketing term that most people are
22       familiar with.
23   Q   On your business card can you identify for me
24       what company is represented?
25   A   I'm trying to visualize my business card which

8 (Pages 26 to 29)

Richard Lode

Page 30

1    I haven't had since my days as a regional claims
2    manager.  I can't recall specifically what it
3    refers to.
4    Q  I'm not asking for it back then.  Do you
5    currently not have a business card?
6    A  That is correct.
7    Q  In the course of reviewing Mrs. Barnes' file, do
8    you recall coming across the name of Lorraine
9    Dell Harris?
10   A  Yes, I do.
11   Q  Who do you know Lorraine Dell Harris to be?
12   A  She's a long-term disability case manager
13   working in the Pittsburgh claims office.
14   Q  To the best of your knowledge, by whom is she
15   employed?
16   A  She's employed by Life Insurance Company of
17   North America.
18   Q  To your knowledge, is she specifically assigned,
19   among potentially other accounts, to Zeneca
20   policyholder claims?
21   A  I don't know that specifically.
22   Q  Would it be fair to say that Ms. Harris handles
23   claims for each of the three underwriting
24   companies?
25   A  Yes.

Page 31

1    Q  Similar to all the LINA claim handling
2    personnel?
3    A  That is correct.
4    Q  In the course of reviewing Ms. Barnes' file, did
5    you come across the name Vince, Engel,
6    E-N-G-E-L?
7    A  I know that the file contains some work by the
8    vocational consultant.  I know that Vince Engel
9    works in our Pittsburgh claims office, but I
10   don't specifically recollect seeing Vince's name
11   or work product in the file.
12   Q  I'll just base it then on your general knowledge
13   rather than get involved with exhibits
14   concerning Mr. Engel.
15        Would Mr. Engel perform -- strike that.
16   What services to your knowledge does Mr. Engel
17   perform in his work with LINA?
18   A  He performs the services that a vocational
19   rehabilitation consultant would perform,
20   specifically reviewing files for establishing or
21   creating appropriate plans to return individuals
22   to work, case managers could refer files to him
23   for a vocational analysis or a transfer of
24   skills assessment to determine if there are
25   other jobs or occupations that someone could do

Page 32

1    given their education/vocational history, et
2    cetera.
3    Q  Do you know by whom Mr. Engel is employed?
4    A  Mr. Engel is employed by Life Insurance Company
5    of North America.
6    Q  To your knowledge, does Mr. Engel handle or
7    involve himself in claims for all three of the
8    underwriting companies?
9    A  Yes, I expect that he would.
10        MR. NEWFIELD:  Fred, I'm going to
11   put you on hold for minute.
12        MR. KNOPF:  Do you want to take a
13   break?
14        MR. NEWFIELD:  Off the record
15   for a minute.
16   (Brief recess taken)
17        MR. NEWFIELD:  What I'd like to do
18   is mark that Exhibit D that we sent
19   over and make that Exhibit E.
20   (Whereupon, Deposition Exhibit E was
21   marked for purposes of identification)
22        MR. NEWFIELD:  Fred, I know you
23   don't like to talk on the record, but
24   I want to state for the record that
25   this was Bates stamped I believe by

Page 33

1    your office and produced by us in
2    connection with this case; is that
3    correct?
4        MR. KNOPF:  Are you representing
5    that?  Unfortunately, I forgot my
6    photographic memory of the record.
7        MR. NEWFIELD:  I'm representing
8    that these are two pages that I took
9    from what was Bates stamped and sent
10   to our office under your cover letter
11   dated December 26, 2007 from Emily
12   Hayes.  I'll make that representation
13   and presumably you'll confirm that
14   through your own resources.  I won't
15   ask you to state it on the record.
16   BY MR. NEWFIELD:
17   Q  Mr. Lodi, can you take a look at these two pages
18   for me for a moment?
19   A  Yes, I have them here.
20   Q  Do you have an understanding as to what these
21   two pages represent?
22   A  It's defining the eligible employees under
23   policy LK-7321, showing the classes of eligible
24   employees and listing on the bottom of the first
25   and the second page work locations.

9 (Pages 30 to 33)

Richard Lode

Page 34

1  Q  Can you just go back to Exhibit B that we had
2     previously discussed?
3  A  Yes, I have that here.
4  Q  If you can turn to page 5 of that document for
5     me, please.
6  A  I have it.
7  Q  It appears that they're not identical. Perhaps
8     you can enlighten me as to what the distinctions
9     are?
10        MR. KNOPF: You want him to
11     compare the two documents?
12 BY MR. NEWFIELD:
13 Q  If you could.
14 A  I believe the document marked as Exhibit B is
15     how this section is contained in the Certificate
16     of Insurance and the document noted to be
17     Exhibit E is how it would be presented in the
18     policy.
19 Q  What is the difference between the policy and
20     the Certificate of Insurance?
21 A  My understanding is the Certificate is the
22     all-encompassing document and the policy may be
23     specific to different locations or different
24     classes.
25 Q  Can you look at Exhibit E and indicate whether

Page 35

1     New York, New York salaried employees are part
2     of the classes of eligible employees on this
3     document?
4  A  Yes. It shows up in the same — roughly the
5     same location as on Exhibit B, specifically the
6     third entry in the second column on the right
7     side of the page.
8  Q  Thank you.
9        Mr. Lodi, in connection with your work with
10     the company, are you familiar with whether LINA
11     contracts with any third party vendors?
12 A  Yes.
13 Q  What type of third party vendors would LINA
14     contract with in the course of disability
15     claims?
16        MR. KNOPF: In the course of what?
17        MR. NEWFIELD: Disability claim?
18        MR. KNOPF: In the course of
19     handling disability claims?
20        MR. NEWFIELD: Yes, in the course
21     of handling disability claims. I'll
22     adopt your question.
23 BY MR. NEWFIELD:
24 Q  Can you —
25 A  We can engage vendors who help us to arrange for

Page 36

1     independent medical evaluations, functional
2     capacity evaluations, other aspects of a
3     vocational rehabilitation plan if we wanted to
4     have someone work with a claimant or individual
5     in their location, if you will.
6  Q  So, toward that end, does LINA contract with any
7     third party vendors that are located in New
8     York?
9  A  I don't know of any specifically.
10 Q  In the course of your work with LINA as a senior
11     operations representative, do you have any
12     specific knowledge of any particular file where
13     LINA engaged a vendor that was located in New
14     York?
15 A  I don't recall specifically.
16 Q  So, for instance, if you had an insured who
17     resided in New York for which — as part of the
18     claim handling an IME was going to be scheduled,
19     would that generally be done on a New York
20     Claimant in New York?
21        MR. KNOPF: Objection to form.
22        THE DEPONENT: Yes, it would.
23     Typically though, we make the
24     arrangements with a vendor who then
25     contacts physicians in the various

Page 37

1     locations. However, if there was a
2     situation that would call for a — for
3     example, a rehabilitation on site in
4     home visit, again, we would probably
5     work with one of the national vendors
6     and they would, of course, contact
7     someone in the local area. If the
8     claimant resided in New York State, it
9     would certainly be someone in that
10     location.
11 BY MR. NEWFIELD:
12 Q  What about if LINA was to seek surveillance of a
13     particular claimant in the course of claim
14     handling, would they contact with a New York
15     vendor?
16 A  If surveillance was required and there were only
17     vendors in New York, yes. I'm thinking, again,
18     there might be some scenarios where we use
19     national organizations and they would then vend
20     it out to someone locally. But I could imagine
21     a scenario where we do engage someone in New
22     York to conduct surveillance or an IME or
23     something like that.
24 Q  Does LINA employ field representatives that meet
25     with claimants?

10 (Pages 34 to 37)

Richard Lode

Page 38

1  A  No, we don't.
2        MR. NEWFIELD:  Fred, I'm going to
3     put you on hold for one minute.
4        MR. KNOPF:  Sure.
5  BY MR. NEWFIELD:
6  Q  Mr. Lodi, to your knowledge does LINA have any
7     employees that reside in New York?
8  A  I don't believe so, no.
9  Q  The New York address for Cigna, do you know what
10    occurs at that address?
11       MR. KNOPF:  In New York City?
12       MR. NEWFIELD:  Yes.
13  BY MR. NEWFIELD:
14  Q  I believe it's Park Avenue --
15  A  No, I don't.
16  Q  Are you familiar with that address or you're
17    not?
18  A  I know there is one, but I don't know what they
19    do there.
20  Q  What about -- is there a Hartford office for
21    Cigna?
22  A  Connecticut General is based in Bloomfield.  It
23    wouldn't surprise me if there was one in
24    Hartford.
25  Q  That would be underwriting or sales rather than

Page 39

1     claims?
2  A  Yes.  The claims entities are in the three sites
3     that I mentioned before.
4  Q  How long has the Glendale site been operational
5     to your knowledge?
6  A  Four to five years.
7        MR. NEWFIELD:  One minute, Fred.
8        Mr. Lodi, thank you for your time.
9     I think we are done with the
10       deposition.
11       Fred, I don't know if you have any
12    questions.
13       MR. KNOPF:  I do have a few
14    questions actually.
15          EXAMINATION
16  BY MR. KNOPF:
17  Q  Mr. Lodi, are you familiar with whether there
18    are any service contracts or cost-sharing
19    arrangements that exist between LINA, Cigna Life
20    of New York, and Connecticut General Life
21    Insurance Company?
22       MR. NEWFIELD:  Objection to form.
23       THE DEPONENT:  My understanding is
24    that there are service agreements that
25    allow employees of LINA to manage

Page 40

1     those claims in the claims
2     organization, although the other
3     aspects of the work involving
4     underwriting, accounting, sales, et
5     cetera, are all specific and
6     distinct.
7  BY MR. KNOPF:
8  Q  Are you familiar with the inner workings of the
9     accounting aspects of those agreements?
10  A  No, I'm not.
11  Q  Do you know  if there are accounting personnel
12    employed by LINA that who would be familiar with
13    that?
14  A  I would expect there would be, yes.
15  Q  Do you know whether LINA has any decision-making
16    authority over the business of Cigna Life of New
17    York and/or Connecticut General Life Insurance
18    Company?
19       MR. NEWFIELD:  Objection to form.
20       THE DEPONENT:  I know that they do
21    not.
22       MR. KNOPF:  I have no other
23    questions.
24
25

Page 41

1          EXAMINATION
2  BY MR. NEWFIELD:
3  Q  Just to further that for a minute, can you tell
4     me when you say they do not, what do you mean
5     they have no decision making?
6  A  My understanding is that there are three
7     distinct organizations, underwriting entities,
8     that have separate and distinct ways of
9     reserving, accounting, selling their various
10    products and that they have agreements that
11    allow the employees in the three claim offices
12    who are all employees of LINA to apply the same
13    claim process to all of the claims that come
14    into the shop.
15  Q  And you're not familiar with the reserving or
16    the accounting aspects?
17  A  I'm not familiar with how they would differ;
18    but, no, I'm not -- my focus has always been on
19    the claims process, the operational way that
20    claims are managed in the office regardless of
21    underwriting entity.
22  Q  When you say you don't know how they differ, how
23    do you know that they differ?
24  A  For example, I do know in my prior role as a
25    regional claim manager that there are different

Richard Lode

Page 42

1  ways of reserving, that the underwriting
2  entities reserve differently. I know that
3  expenses, for example, are processed differently
4  depending on the underwriting entity, and the
5  policies look different. Their formats are
6  different.
7  Q  How long ago was this that you were -- did you
8  say regional claims manager?
9  A  Yes.
10  Q  How long ago?
11  A  I moved into the senior operations role in
12  approximately 2001. Prior to that, for about
13  five years, I was a regional claims manager.
14  Q  So, do you know today as we sit here whether the
15  three underwriting entities reserve differently?
16  A  Yes. I know there has not been a change.
17  Q  So, were you familiar with all three distinct
18  matters in which they reserved back when you
19  were a regional claims manager?
20  A  The specifics of how they reserve was not
21  something that anyone in claims would be
22  necessarily aware of as it would not have an
23  impact on what we did from a claims operational
24  side.
25  Q  So, how would you know that they reserved

Page 43

1  differently?
2  A  Because I was aware of the reserving process.
3  As a manager, I would get reports that would
4  identify reserves. They came from different
5  areas. They were formatted differently. They
6  were prepared by different people at different
7  locations. They were not similar.
8  Q  Where would the reserves be generated out of
9  during your time as a regional claims manager?
10  A  For LINA it would come from Philadelphia; for
11  Connecticut General it would come from
12  Bloomfield, Connecticut; and I don't recall
13  specifically where it would come for CLICNY.
14  Q  You talked about service contracts for claim
15  handling between LINA, CLICNY and CGLIC.
16  Can you tell me if you've ever seen that
17  service contract?
18  A  No, I never have.
19  Q  How do you know it exists?
20  A  Because I know that employees of LINA manage and
21  handle and otherwise process claims that involve
22  all three underwriting entities and I couldn't
23  imagine that occurring without someone at those
24  entities entering into such an agreement.
25  MR. KNOPF: I can also tell you,

Page 44

1  Mr. Newfield, it's contained in public
2  documents.
3  MR. NEWFIELD: We're going to call
4  for the production of those documents
5  that Mr. Lodi has testified to in
6  response to your specific question.
7  If you care to just advise me where I
8  could find it myself, it might
9  short-circuit the request for
10  production. Is there a response?
11  MR. KNOPF: I'll take that under
12  consideration and get back to you.
13  BY MR. NEWFIELD:
14  Q  So, Mr. Lodi, you've never seen any documents
15  that purport to address LINA's ability to
16  consider disability claims for the other two
17  underwriting companies?
18  MR. KNOPF: I have no idea what
19  that question means. Objection.
20  BY MR. NEWFIELD:
21  Q  Does the witness understand the question?
22  A  If you're asking if I've ever seen the actual
23  document, the answer is no. That wouldn't be
24  something that from a claim's perspective would
25  be relevant to what I would be doing either in

Page 45

1  my current role or in my former role as a claims
2  manager.
3  Q  You indicated I think on the record that you
4  couldn't imagine LINA reviewing claims for the
5  underwriting companies without a written
6  agreement. So, I guess I'm asking you the basis
7  upon which you would arrive at that
8  determination?
9  A  Well, I guess from just a general intuitive
10  common sense way of looking at it, if I'm
11  someone who works for Connecticut Life Insurance
12  Company, I'm going to want to make sure I'm
13  aware of the process and applications that are
14  being afforded to the claims for which I'm
15  ultimately financially responsible. It would
16  just strike me as something that could not
17  happen without people at the appropriate levels
18  entering into an agreement to consent to have
19  employees at LINA perform that function for
20  them.
21  MR. NEWFIELD: Thanks again. I
22  appreciate your time. I don't know if
23  Mr. Knopf has any further questions
24  for you.
25  MR. KNOPF: We're all set. Thank

12 (Pages 42 to 45)

Richard Lode

Page 46

```
 1        you very much.
 2            I guess we should recite the stips
 3        which is all objections except as to
 4        form are reserved for trial and we
 5        waive reading and signing before this
 6        court reporter.
 7            Is that okay with you?
 8            MR. NEWFIELD:  I'm okay with that.
 9        I stipulate.
10        (Whereupon, deposition concluded at 1:15 p.m.)
11            (Signature waived)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 47

```
 1                ----
 2            C-E-R-T-I-F-I-C-A-T-E
 3   COMMONWEALTH OF PENNSYLVANIA )
 4                    ) SS:
 5   COUNTY OF ALLEGHENY       )
 6
 7            I, Bernadette Mullen, the undersigned, a duly
 8   commissioned and qualified Notary Public within and for
 9   the Commonwealth of Pennsylvania, do hereby certify that
10   before the taking of said deposition, the said deponent
11   was by me first duly sworn to testify to the truth, the
12   whole truth, and nothing but the truth;
13            That the said deposition was taken in all
14   respects pursuant to the stipulations of counsel
15   heretofore set forth;
16            I further certify that the reading and signing
17   of the transcript of the said deposition was waived by
18   the deponent and by counsel for the respective parties
19   and that the said deposition constitutes a true record
20   of the testimony given by the said deponent;
21            I further certify that I am not an attorney or
22   relative of any of the parties and have no interest
23   whatsoever in the event of this litigation.
24            IN WITNESS WHEREOF, I have hereunto set my
25   hand and affixed my seal of office at Pittsburgh,
26   Pennsylvania, this 21st day of January, 2008.
27
28
29
                Bernadette Mullen, Notary Public
30
31
32
```

13 (Pages 46 to 47)

Richard Lode

**A**

ability 44:15
able 3:21 5:13
accounting 6:12
    40:4,9,11 41:9,16
accounting/fina...
    5:24
accounts 30:19
accurate 29:8
acquiescence 6:19
acronyms 21:7
action 3:11 7:20
    7:21
actual 9:22 44:22
addition 19:23
address 6:8 23:12
    23:13 38:9,10,16
    44:15
adjectives 24:14
    24:18
adopt 35:22
advance 11:7
advise 44:7
advised 6:5
affidavit 9:6,14,22
    11:14,17,19,25
    12:16 29:8
affixed 47:25
afforded 45:14
agent 17:23,25
ago 42:7,10
agree 15:18
agreement 43:24
    45:6,18
agreements 39:24
    40:9 41:10
ALLEGHENY
    47:5
allow 39:25 41:11
all-encompassing
    34:22
America 1:9 3:12
    4:6 7:12 8:12,20
    9:16 21:9 22:7
    30:17 32:5
amount 7:5
analysis 31:23
and/or 40:17
answer 3:22 4:1
    7:16,25 20:17

22:4 28:12 29:6
    44:23
answering 6:21
appear 15:17
appearing 4:5
appears 34:7
applications 45:13
apply 41:12
appreciate 20:19
    45:22
appropriate 31:21
    45:17
approximate
    16:23 17:9
approximately
    12:17 17:3 23:11
    42:12
area 37:7
areas 43:5
arrange 35:25
arrangements
    36:24 39:19
arrive 45:7
articulate 21:7
asking 3:14 17:14
    17:21 20:14 30:4
    44:22 45:6
aspect 4:3
aspects 5:18 36:2
    40:3,9 41:16
assessment 31:24
assign 18:18
assigned 18:9,14
    30:18
assume 4:2
assumes 29:7
attached 21:18
attachment 9:19
attention 15:4
attorney 47:21
AT&T 22:1
authority 40:16
Avenue 2:4 38:14
aware 42:22 43:2
    45:13

**B**

B 2:18 13:11,22,23
    25:3 34:1,14
    35:5

back 30:4 34:1
    42:18 44:12
bargaining 16:4
Barnes 1:5 3:11,13
    9:15 10:11,18
    11:11 14:17 17:1
    27:2 30:7 31:4
Barrett 26:25 27:5
    27:7,17 28:5
base 31:12
based 18:22 38:22
basically 14:21
    18:12
basis 14:19 45:6
Bates 32:25 33:9
bear 18:2
behalf 4:5 11:20
    11:21
believe 12:20
    22:13 23:3,9
    24:15 25:2,17,18
    26:15 27:9,11
    32:25 34:14 38:8
    38:11
beneath 27:16
benefits 10:11
Bernadette 1:12
    1:19 47:7,29
best 3:19 6:8,14
    19:12,18 24:17
    25:24 30:14
big 3:16
Bloomfield 38:22
    43:12
body 9:22 25:16
bottom 14:2 15:6
    33:24
brand 8:7 29:20
break 32:13
Brief 32:16
brings 18:1
broader 26:4,6
business 22:18
    29:12,16,23,25
    30:5 40:16

**C**

C 2:19 25:5,6,10
    28:2
California 19:2,5

call 37:2 44:3
called 1:17
capacities 7:8
capacity 17:15,16
    17:20 18:23 36:2
card 29:23,25 30:5
care 44:7
case 4:8 7:3 17:6
    18:18 27:12
    29:19 30:12
    31:22 33:2
categories 26:5,6
category 6:9
certainly 3:23 4:19
    21:8 23:4 37:9
Certificate 15:10
    34:15,20,21
certify 47:9,16,21
cetera 32:2 40:5
CGLIC 21:5 22:14
    22:17 24:2,16
    26:22 29:20
    43:15
chain 27:16
chance 23:15
change 42:16
characterize 17:22
    24:13
charged 20:6
Cigna 7:13 8:4,5,8
    8:12 21:8 25:19
    25:22 29:1,4,13
    29:20 38:9,21
    39:19 40:16
City 2:4 38:11
Civil 1:18 5:8
claim 10:11,18,18
    11:12 12:1,3,8,9
    12:10,15,19,21
    12:23,25 14:17
    16:25 18:5,8,9,14
    18:17,24 19:4,11
    20:5,12 23:15
    24:23 31:1 35:17
    36:18 37:13
    41:11,13,25
    43:14
claimant 23:14
    36:4,20 37:8,13
claimants 17:9,12

37:25
claims 9:1,2 17:5
    18:16 19:9,22
    20:16,24,25
    21:24 23:11,19
    23:24 24:4 27:8
    27:12,13 30:1,13
    30:20,23 31:9
    32:7 35:15,19,21
    39:1,2 40:1,1
    41:13,19,20 42:8
    42:13,19,21,23
    43:9,21 44:16
    45:1,4,14
claim's 44:24
classes 15:14,15
    16:5 33:23 34:24
    35:2
clear 21:6 22:3
clearly 3:24
CLICNY 20:18
    21:5 22:10 23:22
    23:23 24:7 26:20
    29:19 43:13,15
column 15:20 35:6
columns 15:17
come 3:23 21:25
    26:25 31:5 41:13
    43:10,11,13
coming 30:8
command 27:17
commencing 1:24
commissioned
    47:8
common 45:10
Commonwealth
    1:21 47:3,9
companies 7:13
    8:9,10 19:22
    20:23 26:18
    30:24 32:8 44:17
    45:5
company 1:8 3:12
    4:6 7:12 8:12,13
    8:14,19 9:15
    14:24,25 16:21
    18:13 19:24 21:8
    21:9,10,12,23
    22:7 25:23 29:20
    29:24 30:16 32:4

35:10 39:21
40:18 45:12
compare 34:11
complete 14:5
concerning 11:8
11:11 31:14
concluded 46:10
conduct 37:22
confirm 33:13
Connecticut 8:13
20:18 21:10,11
21:19 26:7,10,12
26:14 38:22
39:20 40:17
43:11,12 45:11
connection 11:14
14:16 33:2 35:9
consent 45:18
consider 44:16
consideration
44:12
constitutes 47:19
consultant 31:8,19
contact 18:19 37:6
37:14
contacts 36:25
contained 5:11
12:20 34:15 44:1
contains 31:7
contract 35:14
36:6 43:17
contracts 35:11
39:18 43:14
contrast 7:20
corporate 17:15
17:23
corporation 17:24
17:25 25:19,22
26:8,10,12,14
correct 4:8,9 7:18
9:24 10:12,15
14:14,18 15:19
16:18,19 20:2
22:8,9 23:5,6
24:24 30:6 31:3
33:3
cost-sharing 39:18
counsel 2:1 4:8,12
4:14 11:5,22,24
47:14,18

COUNTY 47:5
couple 28:10
course 12:19 26:24
27:1 30:7 31:4
35:14,16,18,20
36:10 37:6,13
court 1:2,19 4:21
9:4 13:8 25:2
28:1 46:6
cover 13:17 16:13
33:10
covered 5:25 16:10
21:23
creating 31:21
current 14:22 45:1
currently 30:5
customer 18:21
C-E-R-T-I-F-I-...
47:2

D
D 2:19 28:3,7
32:18
Dallas 19:2
DATE 1:9
dated 5:11 33:11
Dawn 26:25 27:5,7
27:17 28:5
day 47:26
days 30:1
December 25:19
33:11
decision 18:22
41:5
decision-making
40:15
declaration 28:4
28:11 29:8
defendant 1:10 2:5
7:22
defined 8:3
defining 33:22
DEFT 5:4 6:20
Delaware 23:13
Dell 30:9,11
depending 29:18
42:4
deponent 2:11
7:17 8:1,25 18:3
20:1 27:19 36:22

39:23 40:20
47:10,18,20
deposed 5:21 7:3,6
7:8
deposition 1:7,16
1:22 2:18,18,19
2:19,20 4:7 7:10
9:8 10:21,24
11:7,8,10 13:23
17:17 25:6 28:7
32:20 39:10
46:10 47:10,13
47:17,19
depositions 6:22
describe 12:4
description 15:13
determination
45:8
determine 31:24
develop 18:20
differ 41:17,22,23
difference 34:19
different 20:4 24:9
24:21 34:23,23
41:25 42:5,6
43:4,6,6
differently 42:2,3
42:15 43:1,5
direct 27:22
disability 8:8 9:2
10:11 12:25
18:13 23:23 24:4
30:12 35:14,17
35:19,21 44:16
discuss 4:16
discussed 34:2
discussion 4:13
11:3,5,11
discussions 4:11
4:24 10:23 11:2
11:7,16,24
disparate 24:20
distinct 40:6 41:7
41:8 42:17
distinctions 34:8
DISTRICT 1:2,2
document 9:13,18
12:22 13:9 14:8
14:20 25:12,17
27:25 28:17,19

34:4,14,16,22
35:3 44:23
documentation
12:18
documents 12:6
13:21 34:11 44:2
44:4,14
doing 44:25
domiciled 21:14
Drive 2:6
duly 3:5 47:7,11
duties 8:23

E
E 2:20 32:19,20
34:17,25
ears 4:23
education/vocati...
32:1
either 7:9 29:18
44:25
eligible 15:11,14
15:15 16:5 33:22
33:23 35:2
ELSER 2:6
Emily 33:11
employ 37:24
employed 24:7
30:15,16 32:3,4
40:12
employee 16:10
17:1 19:9 20:24
employees 15:24
16:3,13 19:6,10
19:12,15,18,21
20:5,6,13,16
22:24 23:4,8,19
23:22,23 24:4,24
33:22,24 35:1,2
38:7 39:25 41:11
41:12 43:20
45:19
employee's 18:5
employer 8:18
18:18
engage 35:25
37:21
engaged 36:13
Engel 31:5,8,14,15
31:16 32:3,4,6

enlighten 34:8
entering 43:24
45:18
entirety 12:7,9,10
12:15
entities 8:11 19:6,7
20:5,15 21:1
24:20 39:2 41:7
42:2,15 43:22,24
entitled 3:11
entity 41:21 42:4
entry 35:6
envision 3:16
Esquire 1:22 2:3,5
established 20:12
establishing 31:20
estimate 7:5,7
et 32:1 40:4
evaluations 36:1,2
event 47:23
examination 1:17
3:8 39:15 41:1
examined 3:6
example 22:2 37:3
41:24 42:3
executed 11:15
executing 12:15
exhibit 2:18,18,19
2:19,20 9:6,8,12
9:20 13:10,11,18
13:22,23 15:5
25:3,5,6 28:2,3,7
32:18,19,20 34:1
34:14,17,25 35:5
exhibits 31:13
exist 39:19
exists 43:19
expect 20:16 32:9
40:14
expected 24:10
expenses 42:3
experience 17:19
18:1
exposure 17:10
eyes 4:22
E-N-G-E-L 31:6
E-X-H-I-B-I-T-S
2:16

F

Richard Lode

face 3:17
fair 6:3,24 19:21
  29:9 30:22
fall 7:13 8:10
familiar 5:22
  10:10,17 12:10
  12:24 14:13,21
  22:15 25:12
  29:22 35:10
  38:16 39:17 40:8
  40:12 41:15,17
  42:17
familiarity 14:19
far 3:25
faxed 14:9
Federal 5:8
field 37:24
file 10:18 12:1,3,8
  12:9,11,15,19,21
  12:23 23:16
  26:24 27:1 30:7
  31:4,7,11 36:12
files 18:9 31:20,22
finance 6:12
financially 45:15
find 44:8
first 3:5 6:5 25:13
  33:24 47:11
five 9:20 39:6
  42:13
focus 25:16 41:18
following 16:4
follows 3:6
force 24:21
forgot 33:5
form 7:24 8:24
  13:1 19:25 24:11
  27:18 36:21
  39:22 40:19 46:4
formats 42:5
formatted 43:5
former 45:1
forth 47:15
Four 39:6
FRANKEL 2:3
frankly 5:12
Fred 2:5 11:3,6
  32:10,22 38:2
  39:7,11
Friday 5:22

front 25:11
function 45:19
functional 36:1
further 6:10 41:3
  45:23 47:16,21

___ G ___

Gannett 2:6
Garden 2:4
general 8:14 15:8
  20:18 21:10,11
  21:20,23 26:7,10
  26:12,14 31:12
  38:22 39:20
  40:17 43:11 45:9
generally 12:5
  36:19
generated 43:8
give 13:12 18:20
given 32:1 47:20
giving 15:13
Glendale 19:2,4
  39:4
Global 26:8
go 34:1
going 3:13 4:1
  7:11 10:4 13:11
  13:25 14:6 15:16
  20:17 21:18 28:1
  32:10 36:18 38:2
  44:3 45:12
good 3:10,25 18:21
  24:8
Grant 1:23
group 7:13 8:4,5
  8:10
groups 16:4
guess 6:4,10,18
  22:10 45:6,9
  46:2
Gulf 1:22
guys 4:15

___ H ___

habit 6:21
hand 47:25
handle 19:22
  20:16 23:23 24:4
  32:6 43:21
handles 20:24

30:22
handling 18:8
  19:11 20:6,7,13
  20:24 31:1 35:19
  35:21 36:18
  37:14 43:15
happen 45:17
Harris 30:9,11,22
Hartford 38:20,24
hate 20:9
Hayes 33:12
header 25:15
help 18:15 35:25
heretofore 47:15
hereunto 47:24
history 32:1
hold 29:3,11,15
  32:11 38:3
holding 25:23
  29:20
Holdings 15:2
  16:1,12 17:1,10
  26:9
home 37:4

___ I ___

idea 21:16 44:18
ideally 18:17
identical 34:7
identification 9:9
  13:24 25:7,10
  28:8 32:21
identified 15:18,21
  16:17 21:2
identify 9:13 11:1
  19:1 20:4,14,22
  26:5 29:23 43:4
identifying 15:11
ignore 25:15
II 26:8
imagine 37:20
  43:23 45:4
IME 36:18 37:22
impact 42:23
important 4:3
Incorporated 26:9
incurred 23:10
independent 36:1
indicate 4:23 15:8
  26:4 34:25

indicated 22:6
  45:3
indicates 10:9,14
  10:17
individual 23:17
  36:4
individuals 15:11
  21:22 31:21
information 5:18
  15:12
initial 12:13 15:13
initially 7:2
inner 40:8
instance 36:16
instruction 4:10
insurance 1:8 3:12
  4:5 7:11,14 8:4,5
  8:12,13,14,19
  9:15 15:10 16:5
  18:13 21:8,9,10
  21:12,23 22:6
  26:15 30:16 32:4
  34:16,20 39:21
  40:17 45:11
insured 36:16
insureds 28:25
  29:11,16
interest 47:22
interpretation 6:1
interrupt 20:8,9
intuitive 45:9
involve 32:7 43:21
involved 16:25
  29:19 31:13
involvement 27:13
involving 40:3
in-house 19:14,17
issue 6:16 22:7,11
  22:16
issued 16:13 21:13
issues 4:16 6:8,15
  6:24 22:19
I-N-D-E-X 2:10

___ J ___

Jane 1:5 3:11 9:14
  10:10 27:1
Janes 3:13
January 1:10,24
  5:12 16:21 47:26

Jason 3:10 13:16
job 1:25 8:15,16
  8:21,21 10:9
  24:17
jobs 31:25
jumps 14:3,3
jurisdictions 25:20
Justin 2:3

___ K ___

Knopf 2:5,14 7:15
  7:24 8:24 11:6
  13:1,12,16 14:9
  17:13 19:25 20:8
  20:19 21:15 24:8
  27:18 28:4 29:5
  32:12 33:4 34:10
  35:16,18 36:21
  38:4,11 39:13,16
  40:7,22 43:25
  44:11,18 45:23
  45:25
know 3:19,24 4:15
  5:20 8:21 11:4
  15:25 19:5 21:12
  21:19,24 23:16
  27:5,7 28:19
  29:6 30:11,21
  31:7,8 32:3,22
  36:9 38:9,18,18
  39:11 40:11,15
  40:20 41:22,23
  41:24 42:2,14,16
  42:25 43:19,20
  45:22
knowledge 6:10
  7:9 17:18 18:8
  19:12,19 23:2,7
  23:22 24:6,17,19
  30:14,18 31:12
  31:16 32:6 36:12
  38:6 39:5

___ L ___

language 5:15
large 22:1
largely 18:16,22
leader 18:15 27:21
  27:22
lengthy 13:9

letter 33:10
levels 45:17
license 22:18
Life 1:8 3:12 4:5
    7:11 8:11,12,14
    8:19 9:15 21:8,9
    21:10,11,23 22:6
    30:16 32:4 39:19
    39:20 40:16,17
    45:11
LINA 5:7 7:10,11
    16:13,20,24
    17:20 19:6,10,10
    19:12,15,18,21
    19:23 20:6,14,15
    20:17,23 21:5
    22:6,19 24:23
    26:18 29:18 31:1
    31:17 35:10,13
    36:6,10,13 37:12
    37:24 38:6 39:19
    39:25 40:12,15
    41:12 43:10,15
    43:20 45:4,19
LINA's 44:15
line 14:22
list 25:18
listed 16:16
listing 33:24
litigation 9:3 47:23
little 5:16
LK-7321 10:15
    13:5 33:23
LK-73231 12:25
local 37:7
locally 37:20
located 16:14 36:7
    36:13
location 15:21
    35:5 36:5 37:10
locations 16:4,16
    19:1 33:25 34:23
    37:1 43:7
lock 23:15
Lodi 1:8,16 2:12
    3:3,10 5:6,10,16
    6:7 7:2 9:6,11
    14:12 17:14
    20:22 21:21 25:9
    33:17 35:9 38:6

39:8,17 44:5,14
long 4:14 9:21
    16:20 39:4 42:7
    42:10
long-term 9:1
    12:25 30:12
look 9:11 15:1,16
    15:20,20 18:16
    25:9,24 27:25
    33:17 34:25 42:5
looked 23:9
looking 45:10
looks 25:14
Lorraine 30:8,11
Lucent 22:1

_____

M
mailing 23:13
main 18:19
making 41:5
manage 39:25
    43:20
managed 41:20
manager 17:5
    18:16,18 27:8,12
    27:15 30:2,12
    41:25 42:8,13,19
    43:3,9 45:2
managers 17:6
    31:22
manner 3:20
mark 9:5 13:9
    25:2 28:2,3
    32:18
marked 2:17 9:9
    9:12 13:24 25:7
    25:10 28:8 32:21
    34:14
marketing 8:7
    29:21
materials 10:20
matter 9:14
matters 42:18
mean 7:20 8:23
    13:3 21:16 41:4
means 16:8 44:19
medical 19:14
    26:17 36:1
meet 37:24
member 27:10

memory 33:6
mentioned 18:25
    39:3
minute 32:11,15
    38:3 39:7 41:3
minutes 12:17
    28:10
missing 5:15
moment 10:3
    33:18
morning 3:10
moved 23:17 42:11
Mullen 1:12,19
    47:7,29

_____

N
N 2:5
name 3:10 26:25
    29:21 30:8 31:5
    31:10
national 22:23
    37:5,19
Nationwide 22:2
nature 11:4
necessarily 42:22
necessary 12:21
    14:23
need 28:11
never 43:18 44:14
new 1:2,18 2:4
    8:13 15:23,23
    16:9,9,14 17:12
    18:6,12 21:8
    22:8,13,20 23:8
    23:14 24:15 35:1
    35:1 36:7,13,17
    36:19,20 37:8,14
    37:17,21 38:7,9
    38:11 39:20
    40:16
Newfield 2:3,3,13
    3:9,11 4:20 5:4
    6:3,23 7:1,19 8:2
    9:4,10 13:4,7,19
    13:25 14:11
    17:18 18:7 20:3
    20:11,21 21:17
    24:10,12 25:1,8
    27:24 28:6,9
    29:9,10 32:10,14

32:17,22 33:7,16
    34:12 35:17,20
    35:23 37:11 38:2
    38:5,12,13 39:7
    39:22 40:19 41:2
    44:1,3,13,20
    45:21 46:8
nine 9:25
North 1:9 3:12 4:6
    7:12 8:12,19
    9:15 21:9 22:7
    30:17 32:5
Notary 1:20 47:8
    47:29
notated 10:14
note 5:5 14:1
    15:16
noted 9:19 12:20
    15:5 16:3 34:16
notice 4:7 5:7,11
numbered 9:25
numeral 26:1,2,7,8
NY 2:7

_____

O
objection 7:15,24
    8:24 13:1 17:13
    19:25 21:15
    24:11 27:18 29:5
    36:21 39:22
    40:19 44:19
objections 46:3
occasion 15:1
    16:24
occupational 16:5
occupations 31:25
occur 5:1
occurring 4:24
    43:23
occurs 38:10
offered 8:8
office 3:13 27:12
    30:13 31:9 33:1
    33:10 38:20
    41:20 47:25
offices 1:21 18:15
    18:25 19:1,9
    24:15 41:11
okay 3:22 4:18
    6:17 10:6 15:7

28:14,23 46:7,8
once 28:21
ones 16:17
operate 19:4
operational 5:17
    39:4 41:19 42:23
operations 8:17,22
    36:11 42:11
opportunity 18:20
organization 40:2
organizations
    25:20 37:19 41:7
overlaps 6:13,13

_____

P
page 2:11,17 12:22
    12:22 14:1,3,3
    15:5,6,9 16:18,18
    25:16,24 26:1,2
    33:25 34:4 35:7
pages 9:19,20,23
    25:16 33:8,17,21
papers 13:14
paragraph 10:4
    16:3 28:21
paragraphs 9:25
parentheses 25:21
Park 38:14
part 10:9 35:1
    36:17
particular 12:24
    14:13 36:12
    37:13
parties 47:18,22
party 7:21 35:11
    35:13 36:7
pending 4:10,15
    4:25
Pennsylvania 1:21
    1:23 19:3 47:3,9
    47:26
people 18:24 24:7
    24:8 29:21 43:6
    45:17
perform 31:15,17
    31:19 45:19
performs 31:18
period 15:12
person 3:15
personal 7:20

| | | | | |
|---|---|---|---|---|
| 17:15,22 | prepared 11:21,22 | question 3:20 4:1 | relation 7:9 | responses 18:2 |
| personally 7:23 | 43:6 | 4:2,10,14,24 10:5 | relationship 18:21 | 22:5 |
| personnel 5:23 | PRESENT 2:1 | 17:14 20:20 | relative 47:22 | responsibilities |
| 6:13 18:9 19:4 | presented 34:17 | 21:21 22:10 24:1 | relevant 44:25 | 10:10 |
| 19:11,15,17 | presumably 11:22 | 24:9 28:13,22 | remove 13:19 | responsible 17:5 |
| 20:13,24 31:2 | 33:13 | 35:22 44:6,19,21 | rephrase 3:20 | 27:9 45:15 |
| 40:11 | presume 4:25 6:14 | questions 3:14,18 | report 27:14 | responsive 5:18 |
| persons 15:14,15 | previous 15:1 22:5 | 6:1,21 14:7 18:2 | reported 1:11 | rest 12:23 |
| perspective 44:24 | previously 7:3,6 | 39:12,14 40:23 | 27:15,21 | return 31:21 |
| Philadelphia | 34:2 | 45:23 | reporter 1:20 4:21 | review 12:1,9,13 |
| 43:10 | prior 11:10,24 | Quite 5:12 | 9:5 13:9 25:2 | 12:18,19,22 |
| phone 3:19 | 12:1,15 14:23 | | 28:1 46:6 | 14:22 28:11 |
| photographic 33:6 | 16:25 17:4 28:17 | ___R___ | reports 27:23 43:3 | reviewed 10:20 |
| physicians 36:25 | 41:24 42:12 | read 10:3,7 28:21 | represent 29:3 | 12:3,5,6,7,12 |
| Pittsburgh 1:23 | privileged 11:6 | reading 46:5 47:16 | 33:21 | 13:5 14:16 |
| 19:3 27:12 30:13 | probably 37:4 | ready 28:12,15 | representation | reviewing 12:14 |
| 31:9 47:25 | problem 6:16 | realm 6:9 | 33:12 | 26:24 27:1 30:7 |
| Plains 2:7 | Procedure 1:19 | reasonable 5:25 | representative | 31:4,20 45:4 |
| plaintiff 1:6 2:3 | 5:9 | recall 17:3,6 27:4 | 8:17,22 28:25 | re-do 20:10 |
| 7:22 | process 41:13,19 | 30:2,8 36:15 | 29:4,12,15,18 | Richard 1:8,16 |
| plan 12:25 14:13 | 43:2,21 45:13 | 43:12 | 36:11 | 2:12 3:3 9:6 |
| 14:20 36:3 | processed 42:3 | recess 32:16 | representatives | right 15:20 35:6 |
| plans 31:21 | produced 5:6 33:1 | recite 46:2 | 37:24 | 41:24 42:11 45:1 |
| please 3:19,24 9:5 | product 31:11 | recollect 31:10 | represented 29:24 | 45:1 |
| 9:13 18:24 20:10 | production 44:4 | recollection 12:12 | representing 33:4 | role 14:23,25 |
| 21:4 25:10 34:5 | 44:10 | 18:4 | 33:7 | roles 14:23 17:4 |
| point 4:12 18:19 | products 8:8 26:16 | recollections 17:11 | represents 3:13 | Roman 26:1,2,7,8 |
| policies 14:22 | 41:10 | record 4:4,17,17 | 28:24 | roughly 35:4 |
| 21:13 22:8,11,16 | proffered 5:17,21 | 5:5 13:15 14:1 | request 44:9 | Rule 5:7 |
| 42:5 | 6:7 17:17,24 | 15:17 21:3,6 | required 37:16 | Rules 1:18 5:8 |
| policy 10:14 12:18 | proffering 5:9 | 32:14,23,24 33:6 | research 22:16 | |
| 13:5 14:6 15:2 | provide 24:17 | 33:15 45:3 47:19 | reserve 42:2,15,20 | ___S___ |
| 16:1,6,11,12 17:7 | provider 26:17 | refer 31:22 | reserved 42:18,25 | salaried 15:23 |
| 23:10 33:23 | providing 15:12 | reference 7:11 | 46:4 | 16:10 35:1 |
| 34:18,19,22 | public 1:20 44:1 | references 15:9,10 | reserves 43:4,8 | sale 24:15 |
| policyholder 18:12 | 47:8,29 | refers 30:3 | reserving 41:9,15 | sales 24:20 38:25 |
| 30:20 | purport 44:15 | regard 17:8 21:11 | 42:1 43:2 | 40:4 |
| policyholders | purpose 7:10 | 24:1 | reside 38:7 | saying 12:4 |
| 21:13 22:1,11,23 | purposes 9:9 13:24 | regarding 11:16 | resided 17:12 | says 13:17 15:22 |
| 23:1 | 25:7 28:8 32:21 | regardless 41:20 | 36:17 37:8 | 15:23 16:7 28:24 |
| posed 20:20 | pursuant 1:18 5:6 | regards 28:19 | resides 18:6 | scenario 37:21 |
| potentially 16:15 | 17:16,25 47:14 | regional 17:5 | resolve 6:17 | scenarios 37:18 |
| 30:19 | put 32:11 38:3 | 18:16 27:8 30:1 | resources 33:14 | scheduled 36:18 |
| preceding 16:2 | P-R-O-C-E-E-D... | 41:25 42:8,13,19 | respect 16:1 19:14 | seal 47:25 |
| precisely 12:4 | 3:1 | 43:9 | 22:17 24:16 | second 13:12 14:2 |
| predicated 14:7 | P.C 2:3 | Registrant 25:4 | respective 47:18 | 26:2 33:25 35:6 |
| 17:19 | p.m 1:24 46:10 | rehabilitation | respects 47:14 | section 34:15 |
| preparation 10:20 | | 31:19 36:3 37:3 | respond 26:11 | see 3:16 15:22 |
| 10:24 | ___Q___ | related 5:23,24 | response 4:6 6:4 | 25:25 26:3 28:24 |
| prepare 11:19,20 | qualified 47:8 | relating 10:18 | 6:11 44:6,10 | 29:2 |

Richard Lode

Page 53

seeing 25:13 31:10
seek 37:12
seen 28:17 43:16
    44:14,22
self-explanatory
    25:14
selling 41:9
senior 8:17,22
    36:10 42:11
sense 15:9 45:10
sent 25:3 32:18
    33:9
sentence 16:2
separate 41:8
September 9:16
    11:15
sequential 14:4
series 3:14
served 4:7
service 39:18,24
    43:14,17
services 1:22 31:16
    31:18
set 45:25 47:15,24
seven-paragraph
    28:11
share 18:11
sheet 13:17 14:2
shop 41:14
shortly 22:5
short-circuit 44:9
short-term 9:1
    27:11
showed 23:12
showing 33:23
shown 25:20
shows 35:4
SHS 1:5
side 24:23 27:13
    35:7 42:24
Signature 46:11
signed 9:16
significance 15:25
signing 11:25 12:2
    46:5 47:16
silence 6:18
similar 31:1 43:7
similarly 29:3
simply 19:23
simultaneously

25:25
sir 10:1
sit 42:14
site 37:3 39:4
sites 39:2
sitting 3:16
situation 37:2
sixteen 7:7,7
skills 31:24
smile 3:17
SOUTHERN 1:2
speak 5:10,13
specific 6:6 17:11
    18:4 34:23 36:12
    40:5 44:6
specifically 15:1
    21:3 28:20 30:2
    30:18,21 31:10
    31:20 35:5 36:9
    36:15 43:13
specifics 42:20
spend 12:14
SS 47:4
stamped 32:25
    33:9
stapler 13:13
state 4:4 18:6 21:3
    22:13 23:5 32:24
    33:15 37:8
stated 14:12
states 1:2 21:12,19
    21:24 22:12,14
    22:15,17,19,20
    22:24
stay 6:9
steps 27:16
Stewart 2:4
stips 46:2
stipulate 46:9
stipulations 47:14
Street 1:23
strike 18:24 31:15
    45:16
structured 27:20
subsidiaries 25:4
    25:18 26:16
substance 11:16
Suite 2:4
support 27:10,20
sure 6:11 13:2

14:5 17:21 19:2
    20:11 26:11 38:4
    45:12
surprise 38:23
surveillance 37:12
    37:16,22
sworn 3:5 47:11
system 23:9,12,14

──────── T ────────
take 9:11 10:3
    27:25 28:10
    32:12 33:17
    44:11
taken 1:18 32:16
    47:13
talk 32:23
talked 43:14
team 18:15,17,23
    27:10,11,20,21
    27:22
teams 17:6,7
tell 8:4 12:7 16:7
    21:18 25:17
    28:12 41:3 43:16
    43:25
term 8:3,4 29:21
testified 3:6 44:5
testify 47:11
testimony 47:20
Texas 19:3
thank 5:3 10:2
    15:8 35:8 39:8
    45:25
Thanks 45:21
think 4:3 5:13
    12:21 14:12 22:5
    22:22 28:2 39:9
    45:3
thinking 21:25
    37:17
third 7:21 15:21
    35:6,11,13 36:7
three 8:11 18:14
    18:25 19:1,9
    21:1 24:20 30:23
    32:7 39:2 41:6
    41:11 42:15,17
    43:22
time 4:12 6:5 15:1

25:13 27:10,17
    28:10 39:8 43:9
    45:22
times 7:5,7 12:14
title 8:15,16,21
titles 24:14,18
today 3:14 4:5
    11:8 28:17 42:14
today's 10:21,24
    11:7
topic 5:14
topics 5:10,19,24
    6:2,6
touch 22:4
touched 22:22
Tower 1:22
transcript 47:17
transfer 31:23
trial 46:4
true 47:19
truth 47:11,12,12
trying 6:23 29:25
turn 15:4 34:4
two 5:21 9:19,20
    9:22 15:17 33:8
    33:17,21 34:11
    44:16
two-page 9:18
    28:4
Tying 16:2
type 12:6 24:6
    35:13
typically 6:20
    36:23

──────── U ────────
ultimately 45:15
unclear 5:16
undersigned 47:7
understand 3:18
    3:21 4:2 8:1 13:2
    21:21 22:3 44:21
understanding 8:5
    8:7 11:23 19:8
    21:22 22:20
    24:19 25:23
    26:13 33:20
    34:21 39:23 41:6
underwrite 26:15
underwriters

24:21
underwriting 8:11
    19:7,22,23 20:5
    20:23 21:20
    26:18 30:23 32:8
    38:25 40:4 41:7
    41:21 42:1,4,15
    43:22 44:17 45:5
Unfortunately
    33:5
United 1:2 22:24
use 21:7 37:18

──────── V ────────
various 8:8 26:15
    36:25 41:9
vend 37:19
vendor 36:13,24
    37:15
vendors 35:11,13
    35:25 36:7 37:5
    37:17
versus 3:12
Victor 23:14
videotape 5:2
Vince 31:5,8
Vince's 31:10
visit 37:4
visualize 29:25
vocational 19:17
    31:8,18,23 36:3
voice 3:23
volume 18:17,22
vs 1:7

──────── W ────────
waiting 15:12
waive 46:5
waived 46:11
    47:17
want 5:5 11:4
    13:13,16,19,20
    18:17 21:19
    28:22 32:12,24
    34:10 45:12
wanted 36:3
wasn't 22:3
way 27:19 41:19
    45:10
ways 41:8 42:1

| | | | |
|---|---|---|---|
| **Wednesday** 1:23 | **0** | **6** | |
| **we'll** 6:14,17 25:5 28:3 | **07cv** 1:5 | **6** 16:18 | |
| **we're** 3:15 4:21 5:2 6:5 13:10 44:3 45:25 | **1** | **6103** 1:5 | |
| **We've** 20:11 | **1** 5:10 14:1 25:24 26:1 | **7** | |
| **whatsoever** 47:23 | **1:15** 46:10 | **7** 5:12 | |
| **WHEREOF** 47:24 | **10604-3407** 2:7 | **707** 1:22 | |
| **White** 2:7 | **11** 9:16 11:15 | **9** | |
| **WILSON** 2:6 | **11530** 2:4 | **9** 2:18 | |
| **witness** 1:17 3:4 29:6 44:21 47:24 | **12:15** 1:24 | | |
| **witnesses** 5:21 | **13** 2:18 | | |
| **work** 6:15,17,24 13:20 23:12 31:7 31:11,17,22 33:25 35:9 36:4 36:10 37:5 40:3 | **133** 23:11,19 | | |
| **worked** 8:19,25 16:20,23 | **16** 1:10,24 | | |
| **working** 16:9 18:4 18:21 30:13 | **1825** 1:22 | | |
| **workings** 40:8 | **1988** 16:22 | | |
| **works** 19:8 31:9 45:11 | **1990** 23:10,20 | | |
| **wouldn't** 38:23 44:23 | **2** | | |
| **written** 45:5 | **2** 5:14 6:9 10:4 25:24 26:2 | | |
| **Y** | **20** 16:22,23 | | |
| **year** 9:17 | **200057** 1:25 | | |
| **years** 16:22,23 39:6 42:13 | **2001** 42:12 | | |
| **York** 1:2,18 2:4 8:13 15:23,23 16:9,9,14 17:12 18:6 21:9 22:8 22:13,21 23:8,14 24:15 35:1,1 36:8,14,17,19,20 37:8,14,17,22 38:7,9,11 39:20 40:17 | **2005** 25:19 | | |
| | **2007** 11:15 33:11 | | |
| | **2008** 1:10,24 5:12 47:26 | | |
| | **21st** 47:26 | | |
| | **25** 2:19 | | |
| | **26** 33:11 | | |
| | **28** 2:19 | | |
| **Z** | **3** | | |
| **Zeneca** 15:2 16:1 16:12 17:1,6,10 18:5 23:1,4,7,19 30:19 | **3** 2:6,13 5:10 14:3 28:21 | | |
| | **30** 12:17 | | |
| | **30(b)6** 5:8 18:1 | | |
| | **301** 2:4 | | |
| | **31** 25:19 | | |
| | **32** 2:20 | | |
| | **39** 2:14 | | |
| | **4** | | |
| | **4** 5:10 | | |
| | **41** 2:13 | | |
| | **45** 12:17 | | |
| | **5** | | |
| | **5** 14:4 15:6 34:4 | | |
| | **585** 2:4 | | |