**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X

**NANCY TRUSSEL,**

                        **Plaintiff,**

         **- against -**

**CIGNA LIFE INSURANCE**
**COMPANY OF NEW YORK and**
**CORNELL UNIVERSITY,**

                   **Defendants.**

------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/4/08
```

**OPINION AND ORDER**

**07 Civ. 6101**

**SHIRA A. SCHEINDLIN, U.S.D.J:**

## I.    INTRODUCTION

Nancy Trussel brings this action pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). Trussel moves to compel discovery. For the reasons set forth below, the motion is granted.

## II.    BACKGROUND

Trussel suffers from transverse myelitis, a neurological disorder that affects the central nervous system.[1] Her symptoms include a complete lack of bowel and bladder control and severe pain in the left leg.[2] Her range of motion is

---

    [1]    *See* Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery ("Pl. Mem.") at 1.

    [2]    *See id.* at 6.

restricted, leaving her unable to balance, stoop, kneel, crouch, or squat.[3] Until

November of 2003, Trussel was employed as a human resources associate at

Cornell University. At that time, she ceased working and filed a claim for

disability insurance with her provider, CIGNA Life Insurance Company of New

York ("CIGNA"). Trussel received disability benefits for twelve months, after

which CIGNA terminated benefits, citing lack of disability within the meaning of

the policy.[4] Trussel appealed that decision and CIGNA again denied benefits on

January 24, 2006 (the "January 24 Letter"), relying in part on a report by Dr.

Joseph Jares.[5] Dr. Jares reviewed Trussel's medical charts, spoke to Trussel's

treating physician, and submitted his initial report to CIGNA on November 18,

---

[3]     *See* Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion to Compel Discovery ("Def. Opp.") at 9.

[4]     *See id.* at 8. The policy states that:
An Employee will be considered Disabled if, because of Injury or
Sickness,
1.     the Employee is unable to perform all the material duties of his or
       her regular occupation, or solely due to Injury or Sickness, he or
       she is unable to earn more than 80% of his or her Indexed
       Covered Earnings; and
2.     After Disability Benefits have been payable for 12 months, the
       Employee is unable to perform all the material duties of any
       occupation for which they may reasonably become qualified
       based on education, training or experience.
Cornell Long Term Disability Plan ("Policy"), at 6, Ex. 2 to Def. Opp.

[5]     *See* 1/24/06 Letter from Lisa Lyle, Appeals Claim Manager, to Nancy
Trussel ("1/24/06 Letter"), Ex. 3 to Def. Opp.

2005.[6] Dr. Jares submitted three addenda to this report on December 12 and

December 21, 2005, and January 5, 2006.[7]

      After exhausting her administrative remedies, Trussel filed this

lawsuit and now seeks discovery beyond the administrative record.

## III.   LEGAL STANDARD

### A.    Standard of Review

      A determination of the standard of review is premature at this stage in

the litigation.[8]  However, a discussion of the possible standards is instructive in

tailoring the scope of discovery.  A denial of benefits under ERISA "is to be

reviewed under a *de novo* standard unless the benefit plan gives the administrator

or fiduciary the discretionary authority to determine eligibility for benefits or to

---

[6]    *See* Def. Opp. at 8-9.  There is no indication that Dr. Jares physically examined Trussel.

[7]    *See id.*

[8]    *See Schalit v. CIGNA Life Ins. Co. of New York*, No. 07 Civ. 0476, 2007 U.S. Dist. LEXIS 50808, at *3 (S.D.N.Y. July 13, 2007) ("The standard of review has not yet been determined in this case, and in fact, that determination might well be premature."); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9033, at *11 (S.D.N.Y. May 13, 2005) ("Based on the record before me, it would be premature for me to make a finding on the standard of review; this is a decision more appropriately reserved for [the district court judge], either at trial or upon a dispositive motion."). *See also Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) ("The plan administrator bears the burden of proving that the deferential standard applies.").

3

construe the terms of the plan."[9] Where the benefit plan grants the fiduciary

discretionary authority, a district court "must review deferentially a denial of

benefits."[10] A district court may reverse a denial of benefits only if the denial was

"arbitrary and capricious, that is 'without reason, unsupported by substantial

evidence or erroneous as a matter of law.'"[11] Under this deferential standard of

review, district courts are usually limited to the administrative record.[12] However,

the Second Circuit has found that "[o]n such an issue [as conflict of interest],

which is distinct from the reasonableness of the plan administrators' decision, the

district court will not be confined to the administrative record."[13] Indeed, other

---

[9]     *Firestone Tire & Rubber Co v. Bruch*, 489 U.S. 101, 115 (1989).

[10]     *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995)
(citing *Firestone Tire*, 489 U.S. at 115 (1989)).

[11]     *Id.* (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d
Cir. 1995) (quotation marks and citations omitted)). *Accord Krauss v. Oxford
Health Plans, Inc.*, No. 06-0343-cv, 2008 U.S. App. LEXIS 4083 (2d Cir. Feb. 26,
2008).

[12]     *See Miller*, 72 F.3d at 1071.

[13]     *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 174 (2d Cir. 2001).
*Accord Firestone Tire*, 489 U.S. at 115 ("[I]f a benefit plan gives discretion to an
administrator or fiduciary who is operating under a conflict of interest, that
conflict must be weighed as a factor in determining whether there is an abuse of
discretion."); *Wagner v. First Unum Life Ins.Co.*, 100 Fed. Appx. 862, 864 n.1 (2d
Cir. 2004) ("[D]iscovery may be appropriate in some cases where a petitioner
seeks to show a conflict of interest."); *Asuncion v. Met. Life Ins. Co.*, 493 F. Supp.
2d 716, 722 (S.D.N.Y. 2007) ("Plaintiff [is] entitled to some limited discovery of
facts not contained in the administrative record" because such discovery is "sought

circuits have ruled similarly, finding that "[d]irect evidence of a conflict is rarely likely to appear in any plan administrator's decision."[14]  Therefore, where a conflict of interest exists, the court may review evidence outside of the administrative record.

### B.     The Good Cause Requirement

The discretionary decision to admit evidence beyond the administrative record "ought not to be exercised without good cause."[15]  However, at the discovery stage, the plaintiff need not "make a full good cause showing, but must show 'a reasonable chance that the requested discovery will satisfy the good cause requirement.'"[16]  In *Anderson v. Sotheby's Inc. Severance Plan*, Magistrate Judge Douglas F. Eaton explained this less-than-good-cause requirement, stating, "If a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle:  To obtain discovery, he

---

to establish a conflict of interest"); *Porter v. Prudential Ins. Co. of Am.*, No. 05 Civ. 6113, 2006 WL 20385457, at *2 (S.D.N.Y. July 18, 2006) ("[D]iscovery geared toward assessing potential conflicts of interest . . . would be proper.").

[14]     *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 389 (3d Cir. 2000).

[15]     *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir. 1997).

[16]     *Schalit v. CIGNA Life Ins.* Co., 2007 U.S. Dist. LEXIS 50808, at *6 (quoting *Anderson*, 2005 U.S. Dist. LEXIS 9033, at *17) .

5

would need to make a showing, that in many cases, could be satisfied only with the help of discovery."[17] The good cause standard required to obtain evidence beyond the administrative record is therefore less stringent than when requesting that the court to consider such evidence in its final determination.[18]

## IV.    DISCUSSION

The question at this stage of the litigation is whether additional discovery should be permitted prior to determining the standard of review, and more specifically, whether Trussel has made a sufficient showing of good cause as described in *Anderson*. Trussel's principal argument is that the plan fiduciary and Dr. Jares were both tainted by a conflict of interest. As detailed below, Trussel offers Dr. Jares's medical report together with addenda, a surveillance tape, and the Social Security Administration ("SSA") letter granting disability status to show a reasonable chance that the discovery requested will satisfy the good cause requirement.

### A.    The Medical Report and Addenda

Between November 2006 and January 2007, CIGNA requested that Dr. Jares submit a medical report and three subsequent addenda evaluating

---

[17]    *Anderson,* 2005 U.S. Dist. LEXIS 9033, at *17.

[18]    *See id.*

6

Trussel's disability status.[19]  Trussel argues that Dr. Jares's opinion changed over

the course of these addenda, and that the plan fiduciary requested additional

addenda until Dr. Jares provided the opinion that would allow CIGNA to deny

benefits.[20]  Trussel asserts that this evidence demonstrates Dr. Jares was tainted by

a conflict insofar as his loyalty was divided between his patient, Trussel, and his

employer, CIGNA.[21]  Trussel also asserts that this change of opinion shows that

the plan fiduciary breached her duty of loyalty under ERISA by seeking to

influence the conclusion reached by Dr. Jares.[22]

           CIGNA does not dispute that it requested three separate addenda from

Dr. Jares after receiving his report, but explains that the addenda were necessary to

clarify the question for the doctor, and therefore his opinion changed as the

question changed.[23]  CIGNA asserts that it asked Dr. Jares to evaluate whether

Trussel could perform "any occupation," as required by the policy, but his report

and first two addenda only addressed whether she could perform her specific

occupation as a human resources associate.  However, in his initial report, Dr.

---

[19]     *See* Def. Opp. at 8-9; Pl. Mem. at 6-8, 7 n.5.

[20]     *See* Pl. Mem. at 6-7.

[21]     *See id.* at 8.

[22]     *See id.* at 8-9.

[23]     *See* Def. Opp. at 8-9.

Jares specifically stated that Trussel's "neuropathic pain . . . plus the combination

of complete lack of bowel and bladder control would make it impossible for Ms.

Trussel to work."[24]  He confirmed this view in the first addendum, but then found

in the second and third addenda that Trussel was not disabled because she had not

shown she was unable to work in "any occupation."  His finding mirrors the policy

standard that a claimant is disabled where "[a]fter Disability Benefits have been

payable for twelve months, the Employee is unable to perform all the material

duties of *any occupation* for which they may reasonably become qualified based

on education, training or experience."[25]

Even if CIGNA is able to resolve the discrepancies between the

report and the three addenda, Dr. Jares's finding that Trussel could perform a

sedentary occupation "with restrictions" conflicts with the final determination that

Trussel was not disabled, meaning that she could "perform all the material duties

of any occupation."[26]  CIGNA's efforts to pick and choose the portions of the

policy it wished Dr. Jares to interpret also tend to show a conflict of interest.  The

January 24 Letter denying Trussel benefits used the phrase "any occupation"

---

[24]     Pl. Mem. at 6.

[25]     Policy at 6 (emphasis added).

[26]     *Id.*

8

without the context of the modifying terms from the policy.[27]  The denial letter also indicated that Dr. Jares's evaluation did not consider the additional requirements found in the policy (*i.e.*, that "the Employee is unable to perform all the material duties of any occupation for which they [sic] may reasonably become qualified based on education, training or experience").  That Dr. Jares outlined several restrictions impairing Trussel lends further support to the idea that neither the doctor nor CIGNA evaluated Trussel's ability to "perform all the material duties" of a sedentary occupation.[28]  The lack of any reference to the "material duties" and "qualifications" requirements in the policy supports Trussel's claim that the plan fiduciary was result-oriented and conflicted in her interests.[29]

Collectively, this evidence demonstrates a reasonable possibility that the requested discovery will satisfy the good cause requirement.  Trussel offers two other grounds for good cause:  the surveillance tape and SSA's determination of disability.

---

[27]     1/24/06 Letter.

[28]     *See id.* at 2 ("[I]n regards to your ability to perform any occupation, [Dr. Jares] advised you would be capable of performing at a sedentary occupational level. . . .  Dr. Jares concluded that with the restrictions outlined you would be capable [of] sedentary capacity on a full time basis.").

[29]     *See id.* at 3 ("[Y]our claim was reviewed to determine your ability to perform any occupation.").

9

### B.    The Surveillance Tape

Trussel next asserts that the plan fiduciary's use of and Dr. Jares's reliance on surveillance video footage demonstrates a conflict of interest.[30]  The video surveillance documents Trussel's travel in a van paid for by CIGNA to an independent medical examination required by CIGNA.[31]  Trussel asserts that mandating travel for approximately ninety minutes, videotaping the travel, and then using the videotape to determine that she is not disabled, amounts to a biased approach that breaches the plan fiduciary's duty of loyalty to Trussel.[32]

CIGNA argues that it is irrelevant that the surveillance was conducted during travel mandated by CIGNA since this surveillance proves a "discrepancy" between the diagnosis by her treating physician and the true severity of her disability.[33]  While CIGNA does not discuss the length or content of the surveillance, Trussel contends that the surveillance amounts to approximately two minutes of footage.[34]  That two minutes of surveillance footage would be given

---

[30]    *See* Pl. Mem. at 9.

[31]    *See id.*

[32]    *See id.*

[33]    *See* Def. Opp. at 10.

[34]    *See* Pl. Mem. at 9.

more weight than the opinion of Trussel's treating physician[35] may also demonstrate a conflict of interest on the part of both Dr. Jares and the plan fiduciary.

### C.    The Social Security Determination

Trussel's final assertion is that CIGNA's failure to consider the SSA determination letter further demonstrates a conflict of interest.  Trussel supports this contention with case law that suggests failure by a plan fiduciary to consider the findings of the SSA may be evidence of a conflict of interest.[36]  CIGNA offers conflicting evidence as to whether it considered the disability determination by the SSA.

CIGNA first argues that it did consider the SSA findings.  CIGNA states that the January 24 Letter denying benefits included the SSA determination letter in a list of documents "received and reviewed" by CIGNA.[37]  This is a clear

---

[35]    *See* 1/24/06 Letter at 3.

[36]    *See* Pl. Mem. at 10 (citing to *Mikrut v. UNUM Life Ins. Co. of Am.*, No. 03 Civ. 1714, 2006 U.S. Dist. LEXIS 92265, at *27 (D. Conn. Dec. 20, 2006) ("Although the findings of the SSA are not binding on Unum, its treatment of that evidence, namely using it to demand a return of funds but failing to factor it in its analysis of [Plaintiff's] claim, reveals that Unum's decision was actually affected by its conflict of interest.").

[37]    Def. Opp. at 11.  CIGNA also asserts that it is not bound by the determination of the SSA. *See id.*  However, Trussel never asserts that CIGNA is bound by the determination of the SSA, she simply argues that the failure to

misrepresentation of the record. The January 24 Letter says only that this document was "received," but says nothing about the review of this document. In fact, part of the January 24 Letter expressly states that "in regards to the Social Security award letter submitted, please note that your disability award from the [SSA] has no impact on your eligibility for Long Term Disability benefits."[38] This lends strong support to Trussel's assertion that CIGNA did not consider the SSA determination letter when making its own determination. This lack of consideration is an additional element that tends to shows a reasonable possibility that further discovery relating to conflict of interest will satisfy the good cause requirement.

## V.   CONCLUSION

Trussel is not required at this stage to prove that a conflict actually existed – she is merely required to show that there is a reasonable chance that the requested discovery will satisfy the good cause requirement. Because Trussel has made this showing, the motion to compel discovery is granted. The Clerk of the

---

consider this determination is evidence of a conflict of interest. *See* Pl. Mem. at 10.

[38]   1/24/06 Letter at 3.

Court is directed to close this motion [Document No. 12].  A conference is

scheduled for April 16, 2008, at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             April 4, 2008

13

## Appearances

**For Plaintiff:**

Jason A. Newfield, Esq.
Justin Corey Frankel, Esq.
Frankel & Newfield, P.C.
585 Stewart Avenue, Ste. 301
Garden City, NY 11530
(516) 222-1600
Fax: (516) 222-0513

**For Defendants:**

Emily Anna Hayes, Esq.
Michelle Marie Arbitrio, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Fax: (914) 323-7001

14